UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
D.C.G. and D.G., individually and as next friend for
their child E.G.,

                                    Plaintiffs,

                                                         Civ. No. 23-1337 (JPC) (JW)

              - against -

NEW YORK CITY DEPARTMENT OF EDUCATION,
NEW YORK CITY BOARD OF EDUCATION,
CHANCELLOR DAVID BANKS, in his official capacity,
and THE CITY OF NEW YORK,

                                    Defendants.
_____X


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**


Erin McCormack-Herbert, Senior Attorney
THE LAW OFFICE OF ELISA HYMAN, P.C.
1115 Broadway, 12th Floor
New York, NY 10010
(646) 572-9056 (phone)
emccormack@specialedlawyer.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................. ii

PRELIMINARY STATEMENT ....................................................1

STATEMENT OF FACTS ..............................................................2

LEGAL STANDARDS ..................................................................10

ARGUMENT ..................................................................................12

I.     Plaintiffs Satisfy the Threshold Standard for an Award of
Compensatory Education Based on the Denial of FAPE to E.G.. ........................12

       A.     E.G. Is Eligible for Compensatory Education Because the DOE
Denied Her a FAPE for Each of the 2019-20, 2020-21, and
2021-22 School Years, as Well as Collectively.........................................13

       B.     Plaintiffs Are Not Required to Show a Gross Violation of the
IDEA to Secure a Compensatory Education Award, But
Plaintiffs Nevertheless Satisfy the Standard.. .............................................15

II.    The IHO and SRO Erroneously Denied E.G. Compensatory
Education to Remedy the FAPE Denial..................................................................17

       A.     E.G. Should Have Been Awarded the Tutoring Plaintiffs
Requested as Compensatory Education to Address the
FAPE Denial for the 2019-20 and 2020-21 School Years........................17

       B.     The IHO Decision Denying Compensatory Education Is Not
Entitled to Deference and Should Be Reversed.......................................25

             1.   Parents Who Place Their Child in an Appropriate Private School
to Mitigate the Harm of an Ongoing, Multi-Year FAPE Denial
Do Not Thereby Forfeit the Right to Compensatory Education
for the Prior Period of FAPE Deprivation.. .........................................25

             2.   The IHO Decision Was Against the Clear Weight of the
Evidence.....................................................................................28

       C.     The SRO Decision Is Not Entitled to Deference and
Should Be Reversed.................................................................................30

III.   Equitable Considerations Favor an Award of Compensatory Education.. ............34

CONCLUSION...............................................................................35

i

## TABLE OF AUTHORITIES

**Cases**

*A. v. Hartford Bd. of Educ.*, No. 3:11-CV-01381-GWC,
2016 WL 3950079 (D. Conn. July 19, 2016) ............................................................. 16

*A.R. v. Conn. State Bd. of Educ.*, No. 3:16-CV-01197 (CSH),
2020 WL 3086032 (D. Conn. June 10, 2020), *aff'd*, 5 F. 4th 155 (2d Cir. 2021) ...................... 15

*A.W. v. N.Y. City Dep't of Educ.*, 287 F. Supp. 3d 420 (S.D.N.Y. 2018) .................................. 26

*Barrett v. Holmes*, 102 U.S. 651 (1880) ............................................................................. 17

*B.D. v. Dist. of Columbia*, 817 F.3d 792 (D.C. Cir. 2016) ...................................................... 34

*Bd. of Educ. of Wappingers Cent. Sch. Dist. v. D.M.*,
831 F. App'x 29 (2d Cir. 2020) (summary order) ...................................................... 26

*Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152 (2d Cir. 2021) ................. 12, 26

*Boose v. Dist. of Columbia*, 786 F.3d 1054 (D.C. Cir. 2015) .................................................. 27

*Branham v. Gov't of the Dist. of Columbia*, 427 F.3d 7 (D.C. Cir. 2005) ................................ 27

*Brennan v. Reg'l Sch. Dist. No. 1 Bd. of Educ.*, 531 F. Supp. 2d 245 (D. Conn. 2008) ...... 26, 27

*Brown v. Dist. of Columbia*, 568 F. Supp. 2d 44 (D.D.C. 2008) ............................................. 34

*C.F. v. N.Y. City Dep't of Educ.*, 746 F.3d 68 (2d Cir. 2014) ................................................. 26

*C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826 (2d Cir. 2014) ................................... 26

*D.B. v. Bedford County Sch. Dist.*, 703 F. Supp. 2d 564 (W.D. Va. 2010) .............................. 32

*Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440 (2d Cir. 2015) ......................... 12, 13, 15, 16, 26, 28

*Doe v. E. Lyme Bd. of Educ.*, No. 3:11-CV-291 (JBA),
2020 WL 7078727 (D. Conn. Dec. 3, 2020) .............................................................. 16

*Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275 (11th Cir. 2008) ...................................... 26

*E.H. v. N.Y. City Dep't of Educ.*, 164 F. Supp. 3d 539 (S.D.N.Y. 2016) ................................. 26

*Endrew F. v. Douglas County Sch. Dist. RE-1*, 580 U.S. 386 (2017) ............................ 11, 23, 32

*E.S. v. Katonah-Lewisboro Sch. Dist.*, 487 F. App'x 619
(2d Cir. 2012) (summary order) ......................................................................... 26

*FB v. N.Y. City Dep't of Educ.*, 923 F. Supp. 2d 570 (S.D.N.Y. 2013) ...................................... 14

*F.B. v. N.Y. City Dep't of Educ.*, 132 F. Supp. 3d 522 (S.D.N.Y. 2015) ..................................... 26

*Florence County Sch. Dist. Four v. Carter*, 510 U.S. 12 (1993) ................................................ 25

*Forest Grove Sch. Dist. v. T.A.*, 129 S. Ct. 2484 (2009) ......................................................... 26

*Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356 (2d Cir. 2006) .................................. 26, 27

*G.B. v. N.Y. City Dep't of Educ.*, 145 F. Supp. 3d 230 (S.D.N.Y. 2015) .................................. 26

*Hall v. Vance County Bd. of Educ.*, 774 F.2d 629 (4th Cir. 1985) .......................................... 32

*Jana K. v. Annville-Cleona Sch. Dist.*, 39 F. Supp. 3d 584 (M.D. Pa. 2014) ............................ 34

*J.E. v. N.Y. City Dep't of Educ.*, 229 F. Supp. 3d 223 (S.D.N.Y. 2017) .................................. 26

*Jefferson County Bd. of Educ. v. Breen*, 853 F.2d 853 (11th Cir. 1988) .................................. 28

*J.F. v. N.Y. City Dep't of Educ.*, No. 12 Civ. 2184 (KBF),
2012 WL 5984915 (S.D.N.Y. Nov. 27, 2012) ................................................................. 14, 31

*Lillbask v. Conn. Dep't of Educ.*, 397 F.3d 77 (2d Cir. 2005) .................................................. 12

*L.O. v. N.Y. City Dep't of Educ.*, 822 F.3d 95 (2d Cir. 2016) ................................................. 34

*M.H. v. N.Y. City Dep't of Educ.*, 685 F.3d 217 (2d Cir. 2012) ......................................... 12, 26

*M.R. v. S. Orangetown Cent. Sch. Dist.*, No. 10-CV-1800 (CS),
2011 WL 6307563 (S.D.N.Y. Dec. 16, 2011) .................................................................... 16

*Mr. and Mrs. A. ex rel. D.A. v. N.Y. City Dep't of Educ.*,
769 F. Supp. 2d 403 (S.D.N.Y. 2011) .............................................................................. 26

*Mr. and Mrs. P. v. W. Hartford Bd. of Educ.*, No. 3:14-cv-1697 (VLB),
2016 WL 5660389 (D. Conn. Sept. 29, 2016), *aff'd*, 885 F.3d 735 (2d Cir. 2018) .................. 16

*Mrs. C. v. Wheaton*, 916 F.2d 69 (2d Cir. 1990) ................................................................. 16

*M.S. v. Utah Schs. for Deaf and Blind*, 822 F.3d 1128 (10th Cir. 2016) .................................. 20

*M.T. v. Arlington Cent. Sch. Dist.*, No. 22-CV-00437 (PMH),
2022 WL 16857176 (S.D.N.Y. Nov. 10, 2022)............................................................. 13, 30, 34

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195 (2d Cir. 2002)..................... 11

*M.W. v. N.Y. City Dep't of Educ.*, No. 15-CV-5029 (WHP),
2015 WL 5025368 (S.D.N.Y. Aug. 25, 2015) .............................................................................. 16

*M.Z. v. N.Y. City Dep't of Educ.*, No. 12 Civ. 4111 (KBF),
2013 WL 1314992 (S.D.N.Y. Mar. 21, 2013) .............................................................................. 30

*P. v. Newington Bd. of Educ.*, 546 F.3d 111 (2d Cir. 2008) ................................................ 12, 20

*P. v. Newington Bd. of Educ.*, 512 F. Supp. 2d 89 (D. Conn. 1997), *aff'd*,
546 F.3d 111 (2d Cir. 2008) ......................................................................................................... 16

*Phillips ex rel. T.P. v. Dist. of Columbia*, 736 F. Supp. 2d 240 (D.D.C. 2010) ........................ 13

*P.K. v. N.Y. City Dep't of Educ.*, 526 F. App'x 135 (2d Cir. 2013) (summary order) .............. 26

*R.E. v. N.Y. City Dep't of Educ.*, 694 F.3d 167 (2d Cir. 2012)........................................... 12, 26

*Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516 (D.C. Cir. 2005)........................ 12, 13, 28

*R.N. v. Bd. of Educ. for Iroquois Cent. Sch. Dist.*, 801 F. App'x 35
(2d Cir. 2020) (summary order) ................................................................................................... 26

*Schaffer v. Weast*, 546 U.S. 49 (2005)....................................................................................... 32

*Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985)............................... 25, 26, 34

*Scott ex rel. C.S. v. N.Y. City Dep't of Educ.*, 6 F. Supp. 3d 424 (S.D.N.Y. 2014) ................... 26

*Streck v. Bd. of Educ.*, 408 F. App'x 411 (2d Cir. 2010) (summary order) ........................ 12, 28

*Student X. v. N.Y. City Dep't of Educ.*, No. 07-CV-2316 (NGG) (RER),
2008 WL 4890440 (E.D.N.Y. Oct. 30, 2008) .............................................................................. 16

*S.Y. v. N.Y. City Dep't of Educ.*, 210 F. Supp. 3d 556 (S.D.N.Y. 2016) ................................... 26

*T.K. v. N.Y. City Dep't of Educ.*, 810 F.3d 869 (2d Cir. 2016)................................................... 26

*T.Y. v. N.Y. City Dep't of Educ.*, 213 F. Supp. 3d 446 (E.D.N.Y. 2016)................................... 26

*VW v. N.Y. City Dep't of Educ.*, No. 21 Civ. 6317 (AT),
2022 WL 3448096 (S.D.N.Y. Aug. 17, 2022)....................................................................... 25, 27

*Willington Bd. of Educ. v. G.W.*, No. 3:15-cv-00614 (MPS),
2015 WL 4164876 (D. Conn. June 15, 2015), *aff'd*, 546 F.3d 111 (2d Cir. 2008)................... 16

*Y.A. v. N.Y. City Dep't of Educ.*, No. 15-CV-05790 (CM),
2016 WL 5811843 (S.D.N.Y. Sept. 21, 2016) ........................................................................ 29

**<u>Statutes</u>**

20 U.S.C. § 1400(d)(1)(A)............................................................................................... 10, 14

20 U.S.C. § 1401(9)(D)......................................................................................................... 11

20 U.S.C. § 1412(a)(1)(A) .................................................................................................... 16

20 U.S.C. § 1412(a)(10)(C) ............................................................................................ 25, 26

20 U.S.C. § 1412(a)(10)(C)(iii) ............................................................................................. 8

20 U.S.C. § 1414(a)(1)(A) .................................................................................................... 11

20 U.S.C. § 1414(a)(2)(B)(ii) .......................................................................................... 11, 29

20 U.S.C. § 1414(d)(1)(A)(i)(IV) ......................................................................................... 18

20 U.S.C. § 1414(d)(1)(A)(i)(VIII)....................................................................................... 15

20 U.S.C. § 1414(d)(1)(A)(i)(VIII)(aa) ................................................................................ 14

20 U.S.C. § 1414(d)(1)(A)(i)(VIII)(bb) ................................................................................ 14

20 U.S.C. § 1414(d)(2)(A) .................................................................................................... 11

20 U.S.C. § 1415(b)(1) ......................................................................................................... 11

20 U.S.C. § 1415(b)(6)(A)..................................................................................................... 11

20 U.S.C. § 1415(g)(1) .......................................................................................................... 14

20 U.S.C. § 1415(i)(2)(A)................................................................................................... 1, 11

20 U.S.C. § 1415(i)(2)(C)(ii) ................................................................................................ 25

20 U.S.C. § 1415(i)(2)(C)(iii) ............................................................................................... 35

29 U.S.C. § 794....................................................................................................................... 1

42 U.S.C. § 1983 ............................................................................................................. 1

N.Y. Educ. L. § 4404(1) ............................................................................................... 11

N.Y. Educ. L. § 4404(1)(c) ........................................................................ 11, 14, 15, 17, 33

N.Y. Educ. L. § 4404(2) ............................................................................................... 11

**<u>Regulations</u>**

34 C.F.R. § 300.43(b) .................................................................................................... 14

34 C.F.R. § 300.101(c)(1) ............................................................................................ 23

34 C.F.R. § 300.102(a)(3)(i) ........................................................................................ 16

34 C.F.R. § 300.102(a)(3)(iv) ...................................................................................... 16

34 C.F.R. § 300.304(c)(6) ............................................................................................ 11

34 C.F.R. § 300.320(b) ................................................................................................. 15

34 C.F.R. § 300.502(b) ................................................................................................. 11

34 C.F.R. § 300.502(c) ............................................................................................ 11, 13

34 C.F.R. § 300.514(a) .......................................................................................... 11, 14, 30

34 C.F.R. § 300.514(b) ................................................................................................. 11

34 C.F.R. § 300.515(a) ................................................................................................. 34

8 N.Y.C.R.R. § 200.4(c)(5) .......................................................................................... 23

8 N.Y.C.R.R. § 200.4(d)(2)(ix)(a) ............................................................................... 15

8 N.Y.C.R.R. § 200.5(i) ............................................................................................... 11

8 N.YC.R.R. § 200.5(j) ................................................................................................ 11

8 N.Y.C.R.R. § 200.5(j)(3)(i)(a)(1) .............................................................................. 34

8 N.Y.C.R.R. § 200.5(j)(3)(iv) ..................................................................................... 29

8 N.Y.C.R.R. § 200.5(j)(5) ........................................................................................... 34

8 N.Y.C.R.R. § 200.5(j)(5)(v) ................................................................................... 11, 14, 30

8 N.Y.C.R.R. 200.5(k) ...................................................................................................... 11

8 N.Y.C.R.R. § 200.6(g) ..................................................................................................... 3

8 N.Y.C.R.R. § 200.6(g)(1) ................................................................................................ 3

8 N.Y.C.R.R. § 200.6(g)(2) ................................................................................................ 3

8 N.Y.C.R.R. § 279.4(a) ................................................................................................... 14

8 N.Y.C.R.R. § 279.4(f) ................................................................................................... 14

**New York State Review Officer ("SRO") Decisions**[1]

SRO Appeal No. 14-179 ................................................................................................... 15

SRO Appeal No. 15-050 ................................................................................................... 15

SRO Appeal No. 19-018 ................................................................................................... 26

SRO Appeal No. 20-023 ............................................................................................. 11, 17

SRO Appeal No. 20-079 ................................................................................................... 15

SRO Appeal No. 23-009 ................................................................................................... 26

SRO Appeal No. 23-027 ................................................................................................... 26

SRO Appeal No. 23-039 ................................................................................................... 26

SRO Appeal No. 23-041 ................................................................................................... 26

SRO Appeal No. 23-052 ................................................................................................... 26

SRO Appeal No. 23-056 ................................................................................................... 26

SRO Appeal No. 23-062 ................................................................................................... 26

SRO Appeal No. 23-064 ................................................................................................... 26

SRO Appeal No. 23-095 ................................................................................................... 26

---

[1] SRO decisions are available at https://www.sro.nysed.gov/decision-search.

**Other Authorities**

N.Y. City Dep't of Educ., *Report Card Sample* ........................................................... 4

N.Y. City Dep't of Educ., *Special Education in NYC* .................................................... 3

NYC Dep't of Educ., *How to Read a High School Transcript* ........................................ 8

NYC Dep't of Educ., *Regents Exam Waiver Guidance (COVID-19)*
(updated July 17, 2020) ................................................................................................. 8

N.Y. State Educ. Dep't, *Compensatory Services for Student with Disabilities as a
Result of the COVID-19 Pandemic* (June 2021) .......................................................... 23

N.Y. State Educ. Dep't, Scale Score to Performance Level
Conversion Charts for 2018 ELA and 2018 Math ......................................................... 4

N.Y. State Educ. Dep't, *Definitions of Performance Levels for the 2018
Grades 3-8 English Language Arts Tests* ...................................................................... 4

N.Y. State Educ. Dep't, *Definitions of Performance Levels for the 2018
Grades 3-8 Mathematics Tests* ...................................................................................... 4

U.S. Dep't of Educ., Office of Spec. Educ. Programs, *Letter to Anonymous*
(Jan. 13, 2010) ............................................................................................................. 32

U.S. Dep't of Educ., Office of Special Educ. and Rehabilitative Servs.,
Letter to Colleague (Nov. 16, 2015) ..................................................................... 15, 30

## PRELIMINARY STATEMENT

D.C.G. and D.G. (collectively, "Plaintiffs" or "Parents") commenced this action pursuant to, *inter alia*, the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1415(i)(2)(A), on behalf of themselves and their daughter, E.G., a high school student with learning disabilities, seeking, among other relief, reversal of the final administrative decision of the New York State Review Officer ("SRO") denying compensatory education to remedy the failure by Defendant New York City Department of Education ("DOE")[1] to provide E.G. a free appropriate public education ("FAPE") as required by the IDEA. *See* Complaint (ECF No. 1).

At Plaintiffs' IDEA due process hearing, the DOE conceded that it failed to provide E.G. a FAPE for the 2019-20, 2020-21, and 2021-22 school years. R14, 34, 43, 199.[2] E.G. attended the eighth and ninth grades at a public school for the first two of those years, and Plaintiffs enrolled her in a private school for students with learning disabilities in the third year. R874, 880. The Impartial Hearing Officer ("IHO") found that the DOE denied E.G. a FAPE for all three years by failing to adequately evaluate her and offer Individualized Education Programs ("IEPs") with the services E.G. needed to progress. R43. The IHO awarded Plaintiffs payment for the 2021-22 private school tuition as a remedy for the FAPE denial in that year, but did not award any compensatory education. R43-45. The SRO affirmed that result, leaving E.G. with no remedy for two years when she was denied a FAPE. R7-30. Plaintiffs herein move for partial summary judgment on their claims under the IDEA for reversal of the SRO decision and an award of compensatory education.[3]  Plaintiffs respectfully request oral argument on the motion.

---

[1] The term "DOE" is used herein to refer both to the DOE individually and the Defendants collectively.

[2] Citations in the format "R__" are to the Bates stamped administrative record filed under seal. Docket No. 23.

[3] In accordance with the Initial Case Management Conference, approved Case Management Plan, and the Court's June 20, 2023 order (ECF Nos. 17, 20, 22), this is a motion for partial summary judgment limited to Plaintiffs' claims for reversal of the SRO decision denying compensatory education under the IDEA. The motion does not encompass Plaintiffs' systemic IDEA claims, claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, or claims under 42 U.S.C. § 1983, for which Plaintiffs seek discovery. *See* Docket No. 17. Additionally, this

## STATEMENT OF FACTS

E.G. is a seventeen year-old high school student classified by the DOE as a student with a Learning Disability. R892. E.G. has been diagnosed with Specific Learning Disorders in reading (dyslexia), written expression, and math, as well as Generalized Anxiety Disorder. R826. E.G. is an intelligent and motivated young woman who has experienced significant emotional and academic difficulties as a result of her multiple learning disabilities. *See* R825-26.

Plaintiffs tried for many years to secure a FAPE for E.G. in public schools. E.G. attended P.S. 166 for elementary school and West End Secondary School ("West End") for sixth through ninth grades. R874. Because E.G. was not receiving an appropriate education in public school, Plaintiffs unilaterally enrolled her in Winston Preparatory School ("Winston"), a private school for students with learning disabilities, for the tenth grade in the 2021-22 school year. R879-80.

The DOE initially evaluated E.G. for special education services in 2015, when she was in the third grade. R789. At that time, E.G. was placed in a gifted and talented program. R797, 798, 874. The DOE's April 2015 psychoeducational evaluation found that E.G. had average cognitive ability. R793. Nonetheless, E.G. had made "minimal progress with regard to classroom reading, math, and writing assessments." R795. The DOE determined that E.G. was a student with a learning disability who required special education services to benefit from instruction and make progress. R795-96. The DOE's IEPs recommended the provision of Special Education Teacher Support Services ("SETSS") for E.G. beginning in the third grade; however, the services were not delivered consistently.  R798-99, 815, 874.

In December 2015, E.G. underwent a private neuropsychological evaluation at the SUNY College of Optometry University Eye Center conducted by Lisa Pass, Ph.D. ("2015 Evaluation").

---

motion does not address Plaintiffs' claim for attorneys' fees in connection with the administrative hearing, SRO appeal, and the instant federal action.

R798-814. E.G.'s IQ tested in the high average range, but she exhibited "significant weaknesses" in basic reading and written expression. R800, 804. In contrast, E.G.'s math skills were "well developed" and consistent with her cognitive ability. R806. Dr. Pass diagnosed E.G. with Specific Learning Disorders in reading and writing and recommended, *inter alia*, "daily SETSS instruction, using multi-sensory techniques" and "additional multi-sensory tutoring outside of school." R808. Plaintiffs provided the 2015 Evaluation to the DOE. R684.[4]

E.G.'s IEPs continued to recommend SETSS through the time she enrolled in West End as a sixth-grade student for the 2017-18 school year. R815, 874-75. E.G.'s March 17, 2017 IEP recommended the provision of group SETSS four periods per week. R720. However, when E.G. began attending West End, the school did not implement the SETSS mandated by her IEP; instead, the school placed her in an Integrated Co-Teaching ("ICT") class,[5] and D.C.G. was later told the school did not offer SETSS. *See* R815, 875.

On January 19, 2018, DOE school psychologist Kerry-Kay Melbourne conducted an educational evaluation ("2018 DOE Evaluation"), resulting in a two-page report concluding that E.G.'s academic skills were "on or approaching grade level." R815-16. The DOE then held an IEP meeting on January 22, 2018 in which it changed E.G.'s IEP recommendation to ICT – the program West End offered – and terminated SETSS. R734. The January 22, 2018 IEP states that E.G. reported experiencing "confusion" in class and "expressed the desire for 1:1 assistance." R729. The IEP did not offer E.G. any 1:1 services or tutoring. R734.

On the spring 2018 New York State exams for sixth graders, E.G. received scores of 1.89

---

[4] The DOE acknowledged receipt of the 2015 Evaluation in a database entry dated May 6, 2016. R684.
[5] An ICT class is comprised of students with disabilities and nondisabled students and is taught by a special education teacher and general education teacher. 8 N.Y.C.R.R. § 200.6(g) & (g)(1)-(2). SETSS is intended to be a service in which a special education teacher provides specialized instruction to a smaller group of students with disabilities. N.Y. City Dep't of Educ., *Special Education in NYC, at* https://www.schools.nyc.gov/learning/special-education/preschool-to-age-21/special-education-in-nyc (last visited Aug. 13, 2023).

in English Language Arts ("ELA") and 2.33 in math. R740. These scores showed that, contrary to the 2018 DOE Evaluation, E.G. was performing well below grade-level standards in ELA and below grade-level standards in math. *See* N.Y. State Educ. Dep't, *Definitions of Performance Levels for the 2018 Grades 3-8 English Language Arts Tests*, (score of 1 indicated that the student performed "well below proficient in standards for their grade"); N.Y. State Educ. Dep't, *Definitions of Performance Levels for the 2018 Grades 3-8 Mathematics Tests* (score of 2 indicated that the student demonstrated "knowledge, skills, and practices" that were "considered partial but insufficient" for the grade).[6]

The DOE held an IEP meeting on January 17, 2019, during E.G.'s seventh-grade year. R740-55. E.G.'s ELA, math, science, and social studies grades, as reported in the January 2019 IEP, all indicated performance below grade level.[7] R36, 740, 878. Yet the IEP continued to recommend ICT; the IEP recommended books on tape and study guide outlines, but no additional services. R747-48. D.C.G. expressed concern to the DOE at the January 17, 2019 IEP meeting and in a January 25, 2019 e-mail about E.G.'s performance on New York State tests and her ability to pass the Regents exams required to graduate from high school. R741-42, 887.  In her January 25, 2019 e-mail, D.C.G. noted a disconnect between E.G.'s report card grades and her struggles on New York State tests, and she expressed concern about whether E.G.'s report cards truly indicated progress that E.G. had made.  R887.

In September 2019, at the beginning of E.G.'s eighth-grade year, D.C.G. sent an e-mail informing West End staff members that E.G. expressed "anxiety about returning to school" and

---

[6] These documents are available at https://www.p12.nysed.gov/irs/ela-math/ (Scale Score to Performance Level Conversion Charts for 2018 ELA and 2018 Math).

[7] On the DOE's 1-4 grading scale, 4 is excelling in standards, 3 is proficient, 2 is below standards, and 1 is well below standards. N.Y. City Dep't of Educ., *Report Card Sample, at* https://www.schools.nyc.gov/docs/default-source/default-document-library/ms-hs-report-card-sample (last visited Aug. 14, 2023). The ELA, math, science, and social studies grades reported on E.G.'s January 17, 2019 IEP were all in the "2" range. R740.  D.C.G. testified that these grades correlated with functioning below grade level. R876; *see also* R36.

showed "low self esteem about her academic abilities," describing herself as "stupid." R886. The school staff met with D.C.G., but did not reconvene an IEP meeting until E.G.'s annual review on January 14, 2020. R877; *see* R756-69. Despite the Parents' concerns, the January 14, 2020 IEP continued to recommend only ICT with books on tape and study guides, without additional academic services. R763. In March 2020, West End closed for in-person instruction due to the COVID pandemic, and all instruction transitioned to remote. R877.

While E.G. was receiving remote instruction, D.C.G. observed first-hand how much E.G. was academically struggling. R877-88. While E.G.'s January 14, 2020 IEP reported a mix of grades below standards and barely meeting standards, D.C.G. received June 2020 progress report grades placing E.G. below standards in ELA and well below standards in math, science, and history. *See* R756 (reporting Fall 2019 report card grades between 2.0 and 3.0); R878 (testifying to May-June 2020 progress report grades of 2.4 in ELA, 1.3 in Living Environment, 1.5 in U.S. History, and 1.7 in Algebra); note 7 *supra* (DOE grading system). Notwithstanding her delays, the DOE promoted E.G. to the next grade in June 2020 and did not reconvene an IEP meeting to address her lack of progress. *See* R878. E.G. returned to West End for the ninth grade for the 2020-21 school year and attended a combination of hybrid and remote schooling. R878.

Dr. Pass conducted a reevaluation of E.G. from November 2020 to January 2021 ("2021 Evaluation"). R817-31. E.G.'s intellectual functioning tested in the high end of the average range, but her academic skills were weak. R819, 824. The majority of E.G.'s academic skills were below grade level, and her academic performance was inconsistent with her strong cognitive abilities. R824, 829. In reading comprehension, Dr. Pass identified a significant drop in E.G.'s percentile scores indicating that E.G. was receiving "inadequate intervention" to address her dyslexia and had fallen behind her peers since 2015. R822, 930-31. In math, E.G.'s

performance showed "little, if any, acquisition of new concepts" since 2015, and E.G. was "clearly not grasping math material." R823-24. E.G. met the criteria for a learning disorder in math, which she did not in 2015, and math had gone from an area of strength to a weakness. R823-24. Dr. Pass found that E.G. was "experiencing significant levels of anxiety" and coping with learning disabilities that had not been "adequately remediated." R825.

In the 2021 Evaluation, Dr. Pass diagnosed E.G. with Specific Learning Disorders in reading (dyslexia), written expression, and math, as well as Generalized Anxiety Disorder. R826. Dr. Pass concluded that E.G. was "clearly not getting the academic support she needs" and would continue to fall behind if "more intensive and appropriate services" were not put in place. R822. Dr. Pass explained that E.G.'s "weaknesses in reading, writing, and math" showed that E.G. required "more intensive services" than she was receiving "to remediate her learning disabilities." R827. Dr. Pass concluded that E.G. needed to be placed in a special education school offering small classes specifically designed to meet the needs of students with language-based learning disabilities and providing, *inter alia*, "multi-sensory instruction throughout the day." R827. Dr. Pass further recommended multisensory tutoring in "reading comprehension, writing, and math until an appropriate educational placement can be found." R827. Plaintiffs provided the 2021 Evaluation to the DOE. R873, 879.

On March 1, 2021, E.G. was assessed by Emily Levy, Ph.D., the Founder and Director of EBL Coaching, a provider of tutoring to students with disabilities. R205, 578, 867-68. Dr. Levy, who holds a Master's Degree in special education and a Doctorate in general education, used the Wide Range Achievement Test, Test of Written Language, and Qualitative Reading Inventory to assess E.G. R209, 867-68. Dr. Levy found that E.G. was "below grade level across the board." R209. Although E.G. was in ninth grade, she tested at a fifth-grade level in math, sixth-grade

level in reading comprehension and spelling, and eighth-grade level in decoding and writing. R578, 868. Based on this assessment and her review of E.G.'s IEPs and prior evaluations, Dr. Levy concluded that E.G. was "in need of intensive remediation to develop all of her core skills" (R209) and recommended that she receive 700 hours of one-to-one multisensory tutoring (R210-12, 578, 869). Plaintiffs provided the DOE with Dr. Levy's recommendations. *See* R578 (Mar. 3, 2021 letter from Dr. Levy included in DOE hearing evidence).

The DOE held an IEP meeting for E.G. on March 23, 2021. R892-907. Plaintiffs requested placement in a nonpublic school, as recommended by Dr. Pass, but the DOE rejected that request and instead continued to recommend only ICT. R896, 901, 906. Like the prior IEPs, the March 2021 IEP did not recommend SETSS, 1:1 academic instruction, or tutoring. R901.

On April 19, 2021, D.C.G. sent an e-mail to West End staff requesting an IEP amendment to add counseling. R882-83. D.C.G. explained that the Parents initially were concerned because school counseling had not been effective in the past, but upon further consideration wanted to try it. R882-83. The school agreed, and an IEP reconvene meeting was held in May 2021. R462-63, 491-92, 882-83. At the hearing, the DOE produced a revised version of the March 2021 IEP reportedly created after the reconvene meeting that added mandates for both counseling (one session per week in a group) and SETSS (four sessions per week in a group). R656-57. However, D.C.G. testified to the two versions of the IEP that she received (R487-90), and neither version recommended SETSS (R901, 915).[8]

The March 2021 IEP set forth as E.G.'s postsecondary goal receipt of a Regents high school diploma followed by a four-year college degree. R898. The IEP stated that receipt of a

_____

[8] The DOE indisputably did not recommend SETSS for E.G. for the 2020-21 school year, as the DOE's version of the reconvene IEP listed an implementation date of September 1, 2021 for SETSS. R656. As the SRO noted, any SETSS recommended for E.G. would not have been provided until the 2021-22 school year, when E.G. attended Winston, and SETSS was not available to E.G. during the 2019-20 and 2020-21 school years for which Plaintiffs are seeking compensatory education.  R22 n.18.

Regents diploma required earning a sufficient number of high school credits and passing five Regents exams. R899. The March 2021 IEP stated that E.G. had been awarded credits by West End putting her on track to earn the number required for a Regents diploma. R899. West End likewise assigned E.G. passing transcript grades at the end of the 2020-21 school year. R642. However, the Regents exams that E.G. would have taken to assess her academic skills against New York State standards and determine her progress toward earning a high school diploma were waived due to COVID. R642, 879, 899.[9]

While E.G. was attending West End, Plaintiffs tried to provide her with additional academic support at their own expense, but they were not able to financially afford the amount of support that E.G. required to address her academic struggles. R876. Plaintiffs and E.G. also tried seeking out extra help from E.G.'s teachers at West End, but this likewise was not sufficient to meet her needs. R870-72, 876-80.

On August 25, 2021, Plaintiffs, through counsel, provided written notice to the DOE of their concerns regarding the denial of FAPE to E.G. and their intention to place E.G. at Winston and seek payment of the tuition from the DOE. R710-14; *see also* 20 U.S.C. § 1412(a)(10)(C)(iii) (IDEA notice requirement for unilateral private school placement). The August 25, 2021 notice also informed the DOE of the Parents' intention to seek an award of compensatory education. R712.

On September 1, 2021, Plaintiffs, through counsel, filed a due process complaint ("DPC") under the IDEA alleging that the DOE denied E.G. a FAPE for the 2019-20, 2020-21,

---

[9] The March 2021 IEP stated that three of E.G.'s Regents exams had been waived, and E.G.'s DOE transcript lists a total of five Regents exams that were waived by the end of the 2020-21 school year. R899 (March 2021 IEP statement of three Regents exams waived); R642 (DOE transcript listing "Exam Summary" with five Regents exams designated "WA" for waived); *see also* NYC Dep't of Educ., *How to Read a High School Transcript, available at* https://www.schools.nyc.gov/docs/default-source/default-document-library/how-to-read-a-transcript (last visited Aug. 13, 2023); NYC Dep't of Educ., *Regents Exam Waiver Guidance (COVID-19)* 1 (updated July 17, 2020) ("WA" designation indicates waived Regents exam), *available at* https://infohub.nyced.org/docs/default-source/default-document-library/regents-exam-waiver-guidance.pdf.

and 2021-22 school years ("School Years at Issue") by, *inter alia*, failing to adequately evaluate E.G.; predetermining the recommendations in her IEPs; failing to recommend sufficient SETSS, 1:1, and/or small-group instruction; failing to recommend services with research-based instructional strategies; failing to recommend after-school tutoring; and continuing to recommend placement in an ICT setting that was not appropriate for E.G.'s educational needs and where E.G. had not made appropriate progress. R699-709. The DPC requested payment for E.G.'s 2021-22 Winston tuition and an award of compensatory education. R706-08.

An Impartial Hearing Officer ("IHO") was not appointed to the case until December 30, 2021. R34. The DOE was represented by counsel at the hearing. R33. Parents' counsel submitted to the IHO a document subpoena directed to the DOE, and the IHO signed the subpoena on January 28, 2022. R921-22; *see also* R196-201, 363-65, 379-87.

At the hearing, the DOE conceded that it denied E.G. a FAPE for the three School Years at Issue. R14, 43, 199. However, it argued both that Winston was inappropriate and that E.G. was not entitled to any compensatory education. R95-106. Plaintiffs, in support of their request for relief, presented testimony from five witnesses – D.C.G., E.G., Dr. Pass, Dr. Levy, and Winston Academic Dean Evan Schlissel. R33-41. The DOE presented testimony from one witness – Kerry-Key Melbourne – for the sole purpose of opposing relief.[10] R33-34. Defendants did not produce Ms. Melbourne's subpoenaed e-mails prior to her testimony. R196-201, 363-65, 379-87. Plaintiffs' counsel objected to this, but the IHO declined to keep the record open. R384.

The IHO issued a Findings of Fact and Decision dated July 24, 2022 ("IHO Decision"). R32-53. The IHO found that the DOE denied E.G. a FAPE for all three School Years at Issue. R43. The IHO premised this finding not only on the DOE's concession, but also the evidence

---

[10] The hearing witnesses testified via affidavit and live testimony. R33, 37-41, 47-48. The witnesses swore to the truth of their affidavits at the hearing if they had not done so previously. R269, 302, 331, 391.

demonstrating that E.G. "was not making appropriate progress," and the DOE was aware of this but failed to properly evaluate E.G. and offer the services needed to allow her to progress. R43. The IHO found that Winston was appropriate for E.G. for the 2021-22 school year and the equities favored the Parents, and therefore awarded payment for E.G.'s 2021-22 Winston tuition. R44-45. However, the IHO declined to award any compensatory education. R43-44.

The Parents appealed the denial of compensatory education to the SRO. R15, 58-68. The Parents also argued before the SRO that the IHO violated their due process rights by failing to order the DOE to comply with their document subpoena. R15, 58-68. The DOE answered the appeal but did not cross-appeal any of the findings that were favorable to Plaintiffs. R18, 83-92.

The SRO issued a decision dated October 27, 2022 ("SRO Decision") denying the Parents' appeal. R7-30. Contrary to the IHO's findings on FAPE, and the facts alleged by Plaintiffs and established by their evidence, which should have been deemed admitted and which were not appealed, the SRO concluded that E.G. "made progress in the district program" and denied E.G. compensatory tutoring based on that alleged progress, the DOE passing E.G. from grade to grade, and the appropriateness of Winston. R30. The SRO also declined to award the Parents any relief for the DOE's subpoena noncompliance. R19-20.

The Complaint here was filed on February 16, 2023, and Defendants answered on April 24, 2023. ECF Nos. 1, 14. Plaintiffs herein move for partial summary judgment in accordance with the Court's June 20, 2023 scheduling order. ECF No. 22.

## LEGAL STANDARDS

The IDEA is designed to ensure that all students with disabilities are provided with a FAPE. *See* 20 U.S.C. § 1400(d)(1)(A). School districts must adhere to the Act's procedural requirements, appropriately evaluate each student with a disability, and provide services set forth

in an IEP created in conformity with the Act's requirements and reviewed no less than annually. 20 U.S.C. §§ 1401(9)(D), 1414(a)(1)(A), (a)(2)(B)(ii), (d)(2)(A). Every IEP must be based on a full and individualized evaluation or reevaluation "sufficiently comprehensive to identify all of the child's special education and related services needs." 34 C.F.R. § 300.304(c)(6). "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas County Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017). The Court has ruled that this includes both functional and academic progress. *Id.*

The IDEA provides "procedural safeguards that enable parents and students to challenge the local educational agency's decisions." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002). These include the right to obtain an independent educational evaluation and file a DPC. 20 U.S.C. § 1415(b)(1), (b)(6)(A); 34 C.F.R. § 300.502(b)-(c).

In New York, DPCs are first litigated before an IHO. N.Y. Educ. L. § 4404(1); 8 N.Y.C.R.R. § 200.5(i)-(j). Districts bear the burden of proof, including the burden of production and persuasion, with respect to all issues other than the appropriateness of a unilateral private school placement. N.Y. Educ. L. § 4404(1)(c). The district bears the burden of proof on the appropriate compensatory remedy for a FAPE denial. *Id.*; SRO Appeal No. 20-023, at 9.[11]

IHO decisions may be appealed to the SRO. 34 C.F.R. § 300.514(b); N.Y. Educ. L. § 4404(2); 8 N.Y.C.R.R. § 200.5(k). Aspects of an IHO decision that are not appealed to the SRO are final and binding. *See* R18; 34 C.F.R. § 300.514(a); 8 N.Y.C.C.R. § 200.5(j)(5)(v).

Either party may seek review of the SRO's decision in court. 20 U.S.C. § 1415(i)(2)(A). "In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an

---

[11] SRO decisions are available at https://www.sro.nysed.gov/decision-search.

appeal from an administrative determination, not a summary judgment motion.' The district court therefore 'engage[s] in an independent review of the administrative record and make[s] a determination based on a preponderance of the evidence.'" *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (citation omitted) (quoting *M.H. v. N.Y. City Dep't of Educ.*, 685 F.3d 217, 226, 240 (2d Cir. 2012) (alteration in original)). In conducting this review, the Court must give "'due weight'" to the administrative proceedings, but should not defer to the SRO's or IHO's factual findings if they are not well-reasoned and supported by the record. *M.H.*, 685 F.3d at 240-41. Further, an SRO decision that is "against the weight of the evidence" is not entitled to deference and may be reversed. *R.E. v. N.Y. City Dep't of Educ.*, 694 F.3d 167, 194 (2d Cir. 2012). In addition, no deference is due to administrative decisions on questions of law. *Lillbask v. Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005).

## ARGUMENT

### POINT I
### PLAINTIFFS SATISFY THE THRESHOLD STANDARD FOR AN AWARD OF COMPENSATORY EDUCATION BASED ON THE DENIAL OF FAPE TO E.G.

Compensatory education is an equitable remedy available to make up for the denial of a FAPE. *P. v. Newington Bd. of Educ.*, 546 F.3d 111, 123 (2d Cir. 2008); *see also Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 456 (2d Cir. 2015). The availability of compensatory education is crucial to ensuring the right to a FAPE under the IDEA. Regarding compensatory education, the Second Circuit has held: "In enacting the IDEA, Congress did not intend to create a right without a remedy." *Streck v. Bd. of Educ.*, 408 F. App'x 411, 415 (2d Cir. 2010) (summary order).

In crafting an appropriate compensatory education award, Second Circuit courts often look to the D.C. Circuit decision in *Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516 (D.C. Cir. 2005), which held that an award of compensatory education should "be reasonably

calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Reid*, 401 F.3d at 524; *see, e.g., E. Lyme*, 790 F.3d at 457 (citing this portion of *Reid* favorably); *M.T. v. Arlington Cent. Sch. Dist.*, No. 22-CV-00437 (PMH), 2022 WL 16857176, at *8 n.11 (S.D.N.Y. Nov. 10, 2022) (noting applicability of *Reid* standard). Where, as here, the school district conceded the denial of FAPE and the student's deficits had not been remediated, Plaintiffs proved their "'entitlement to a properly crafted compensatory award,'" and "'simply refusing to grant one clashes with *Reid*.'" *M.T.*, 2022 WL 16857176, at *8 (quoting *Phillips ex rel. T.P. v. Dist. of Columbia*, 736 F. Supp. 2d 240, 247-48 (D.D.C. 2010)).

A.  **E.G. Is Eligible for Compensatory Education Because the DOE Denied Her a FAPE for Each of the 2019-20, 2020-21, and 2021-22 School Years, as Well as Collectively.**

Plaintiffs satisfy the threshold standard for an award of compensatory education based on the FAPE denial for the three School Years at Issue. As noted above, the DOE conceded it denied E.G. a FAPE for her eighth, ninth, and tenth grade years (2019-20, 2020-21 and 2021-22). R14, 43, 199. Plaintiffs secured appropriate evaluations from Dr. Pass that comprehensively addressed E.G.'s disability and special education needs and identified the services required to allow E.G. to make appropriate progress. R798-814, 817-31. Although the DOE was required to consider these evaluations in its decision-making process, 34 C.F.R. § 300.502(c), the DOE repeatedly denied E.G. the services that Dr. Pass recommended and E.G. required. *Compare* R808-09, 827 *with* R747-48, 763, 901, 915-16. The IHO found that the record "confirmed that: (1) [E.G.] was not making appropriate progress over the cited academic years; (2) the DOE was aware [E.G.] was not making appropriate progress; and (3) the DOE failed to properly evaluate [E.G.] and make the necessary adjustments to the IEP and related services that would allow [E.G.] to make appropriate educational progress based on her specific educational needs." R43.

The DOE did not appeal the IHO's FAPE determination or findings to the SRO, rendering them final and binding. R18, 83-92; *see* 34 C.F.R. § 300.514(a); 8 N.Y.C.C.R. §§ 200.5(j)(5)(v), 279.4(a), (f). The record thus, without more, conclusively establishes that the DOE violated its most fundamental obligation to E.G. under the IDEA for a three-year period in her education. 20 U.S.C. § 1400(d)(1)(A).

However, the FAPE violations were not limited to the ones identified by the IHO. *See* R699-708. While the DOE's FAPE concession rendered unnecessary the IHO's adjudication of each individual claim raised in Plaintiffs' DPC, the DPC alleged extensive violations of the IDEA's procedural and substantive requirements with respect to, *inter alia*, the conduct of each IEP meeting, the adequacy of the IEPs' contents and recommendations, the delivery of services, and predetermination by the DOE, such as failing to consider all needed services and not offering services such as tutoring. R699-708.[12] The DOE chose to generally concede FAPE and did not meet its burden to refute these allegations. N.Y. Educ. L. § 4404(1)(c); *see* R14, 34, 43, 199.

Further, while the DOE acknowledged that E.G.'s post-secondary goal is to earn a four-year college degree (R898), it failed to offer the services needed to enable her to close the gap between her skill levels and grade-level standards and prepare her to be college-ready to achieve this goal. *See* R703 ¶53(n) (DPC allegation of inadequate transition services); U.S.C. § 1414(d)(1)(A)(i)(VIII)(aa)-(bb) (requiring IEPs to include appropriate transition services to support students in meeting post-secondary goals); 34 C.F.R. § 300.43(b) (transition services include "specially designed instruction"); 8 N.Y.C.R.R. § 200.4(d)(2)(ix)(a) (requiring IEPs to include postsecondary goals and services including instruction to support "movement from

---

[12] Plaintiffs were not aggrieved by the IHO's FAPE ruling and therefore could not have appealed to the SRO the additional FAPE claims not addressed by the IHO. 20 U.S.C. § 1415(g)(1) ("party aggrieved" may appeal). Further, when a party prevails on a FAPE claim, they are not required to appeal an IHO's failure to rule on a claim in a DPC. *FB v. N.Y. City Dep't of Educ.*, 923 F. Supp. 2d 570, 586-89 (S.D.N.Y. 2013); *J.F. v. N.Y. City Dep't of Educ.*, No. 12 Civ. 2184 (KBF), 2012 WL 5984915, at **8-10 (S.D.N.Y. Nov. 27, 2012).

school to post-school activities");[13] U.S. Dep't of Educ., Office of Special Educ. and Rehabilitative Servs., Letter to Colleague 5 (Nov. 16, 2015) ("USDOE 2015 Letter") (emphasizing importance of closing gap between grade level and academic performance), *available at* https://sites.ed.gov/idea/files/idea/policy/speced/guid/idea/memosdcltrs/guidance-on-fape-11-17-2015.pdf.

The IHO acknowledged that the DPC's allegations should be deemed true unless contradicted by the record. R43. The SRO has similarly held in the context of formulating an appropriate remedy for a conceded FAPE denial. SRO Appeal No. 20-079, at 12; SRO Appeal No. 15-050, at 13; SRO Appeal No. 14-179, at 3 n.3. In ruling on Plaintiffs' request for compensatory education, the Court likewise should treat the FAPE denial as encompassing the full scope of the uncontradicted DPC allegations, since the DOE chose to concede the denial of FAPE and did not refute the DPC claims at the hearing. R43; N.Y. Educ. L. § 4404(1)(c).

**B.**    **Plaintiffs Are Not Required to Show a Gross Violation of the IDEA to Secure a Compensatory Education Award, But Plaintiffs Nevertheless Satisfy the Standard.**

When compensatory education is sought for a student no longer eligible for a FAPE under the IDEA, the Second Circuit has indicated that an award of compensatory education must be premised on a gross violation of the Act. *E.g.*, *E. Lyme*, 790 F.3d at 456 n.15; *A.R. v. Conn. State Bd. of Educ.*, No. 3:16-CV-01197 (CSH), 2020 WL 3086032, at *17 (D. Conn. June 10, 2020), *aff'd*, 5 F.4th 155 (2d Cir. 2021).

The gross violation standard was not applied below and does not apply here, as E.G. remains eligible for a FAPE; she was 15 years old when the DPC was filed and is 17 now. R17-30, 32-45, R699-70. Until E.G. is past age twenty-one or receives a regular high school diploma,

---

[13] The IDEA requires transition services no later than the first IEP to be in effect when a student turns sixteen, or younger if determined appropriate by the IEP team, and New York State law requires their inclusion no later than the first IEP to be in effect when a student turns fifteen. 20 U.S.C. § 1414(d)(1)(A)(i)(VIII); 34 C.F.R. § 300.320(b); 8 N.Y.C.R.R. §§ 200.4(d)(2)(ix)(a). E.G. turned 15 while the March 2021 IEP was in effect. R982.

she will remain eligible for a FAPE. 20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.102(a)(3)(i),

(iv). Plaintiffs therefore are not required to show a gross violation of the IDEA. *E. Lyme*, 790

F.3d at 456 n.15; *M.T*, 2022 WL 16857176, at *7 n.9; *Mr. and Mrs. P. v. W. Hartford Bd. of*

*Educ.*, No. 3:14-cv-1697 (VLB), 2016 WL 5660389, at *14 n.9 (D. Conn. Sept. 29, 2016), *aff'd*,

885 F.3d 735 (2d Cir. 2018); *A. v. Hartford Bd. of Educ.*, No. 3:11-CV-01381-GWC, 2016 WL

3950079, at *12 (D. Conn. July 19, 2016); *Willington Bd. of Educ. v. G.W.*, No. 3:15-cv-00614

(MPS), 2015 WL 4164876, at *11 (D. Conn. June 15, 2015); *P. v. Newington Bd. of Educ.*, 512

F. Supp. 2d 89, 112 n. 13 (D. Conn. 2007), *aff'd*, 546 F.3d 111 (2d Cir. 2008).

      However, even assuming, *arguendo*, that the gross violation standard were to apply,

Plaintiffs satisfy it based on (a) the DOE's admitted three-year FAPE denial; (b) the IHO's

express finding that the DOE failed to adequately evaluate E.G. and provide appropriate IEPs,

resulting in inadequate progress; and (c) the multiple substantive and procedural violations

alleged in the DPC that should be deemed admitted. *Cf. Student X v. N.Y. City Dep't of Educ.*,

No. 07-CV-2316 (NGG) (RER), 2008 WL 4890440, at *25 (E.D.N.Y. Oct. 30, 2008) (failure to

implement student's legally required pendency placement for more than a year constituted gross

violation; while student "was not completely deprived of all education," denial of at-home

services to which student was entitled was sufficient to satisfy standard); *see also M.R. v. S.*

*Orangetown Cent. Sch. Dist.*, No. 10-CV-1800 (CS), 2011 WL 6307563, at *12 n.11 (S.D.N.Y.

Dec. 16, 2011) (citing as an example of a gross violation a situation in which "a child was

actually educated under an inadequate IEP").[14]

---

[14] Complete exclusion from school is not required to satisfy the gross violation standard. *See Student X*, 2008 WL
4890440, at *25; *see also Doe v. E. Lyme Bd. of Educ.*, No. 3:11-CV-291 (JBA), 2020 WL 7078727, at *19 (D.
Conn. Dec. 3, 2020) (gross violation found where district failed to maintain student's pendency placement for six
years while student was parentally placed in private school); *M.W. v. N.Y. City Dep't of Educ.*, No. 15-CV-5029
(WHP), 2015 WL 5025368, at *4 (S.D.N.Y. Aug. 25, 2015) (gross violation found based on conceded FAPE denial
for 11 years, including misclassification and placement in inappropriate program); *cf., e.g.*, *Mrs. C. v. Wheaton*, 916
F.2d 69, 75 (2d Cir. 1990) (gross violation where there was school exclusion).

## POINT II
## THE IHO AND SRO ERRONEOUSLY DENIED E.G.
## COMPENSATORY EDUCATION TO REMEDY THE FAPE DENIAL

The administrative decisions erroneously denied E.G. a remedy for two of the three years of the FAPE denial. The Parents secured E.G.'s placement at Winston at their own financial risk in the third year (2021-22), and the DOE has been ordered to pay the 2021-22 Winston tuition to remedy the FAPE denial for that year. R44-45. However, no compensatory education was awarded by the IHO or SRO. R30, 43-44. E.G. therefore was left with no remedy for the FAPE denial for the 2019-20 and 2020-21 school years, when she attended a DOE school, was educated under inappropriate IEPs, and did not make appropriate progress.

This result cannot stand. "A right without a remedy is unknown to the law." *Barrett v. Holmes*, 102 U.S. 651 (1880). The IHO and SRO decisions denying E.G. a remedy for two of the three years when she was denied a FAPE are contrary to law and the evidence, as well as inadequately reasoned and supported. They are not entitled to deference and should be reversed.

**A.    E.G. Should Have Been Awarded the Tutoring Plaintiffs Requested as Compensatory Education to Address the FAPE Denial for the 2019-20 and 2020-21 School Years.**

As noted above, the SRO interprets New York State law as requiring the DOE to bear the burden of proof on compensatory remedy. N.Y. Educ. L. § 4404(1)(c); *e.g.*, SRO Appeal No. 20-023, at 9. At the hearing, however, the DOE failed to prove that no compensatory education was warranted. To the contrary, the evidence demonstrated the appropriateness of the Parents' request for an award of 700 hours of tutoring. *See* R122. Dr. Pass, Dr. Levy, D.C.G., and E.G. all testified to the need for compensatory 1:1 tutoring for E.G. using appropriate strategies for students with dyslexia.

Dr. Pass is a licensed psychologist and certified school psychologist with a Master's

Degree and Ph.D. in school psychology from NYU who had more than 30 years of experience at the time of the hearing and had worked with approximately one thousand students, at least half of whom had dyslexia. R338, 923. Dr. Pass testified that she supported and recommended the award of 700 hours of tutoring because E.G. "missed out on years of learning" before being placed at Winston. R941. Dr. Pass testified that multisensory tutoring is appropriate for students with dyslexia and supported by substantial research showing its effectiveness. R352-53; *see* 20 U.S.C. § 1414(d)(1)(A)(i)(IV) (endorsing use of evidence-based instruction on IEPs).

As noted above, Dr. Pass's 2021 Evaluation showed that despite her "strong cognitive skills," E.G. continued to be "behind her peers and below grade level." R340. Dr. Levy's evaluation likewise showed that E.G. was academically below grade level. R209, 578, 868. Winston Dean Evan Schlissel testified that E.G. came to Winston "quite delayed" and "far below 10th grade level." R241.

Dr. Pass testified that had E.G. "received appropriate academic intervention, she would have been performing at grade level or above based on her cognitive potential" and "would not have endured years of wasted time, anxiety, and low self esteem." R941. Dr. Pass was familiar with Winston's educational program, and testified that even though Winston was an appropriate placement for E.G., she still needed compensatory tutoring. R356-57, 941. Dr. Pass testified that the tutoring would compensate E.G. for her prior inappropriate education and support her as she completed high school and in the transition to college. R941-42. Dr. Pass further testified that the tutoring would help E.G. because students with dyslexia can experience "two steps forward and one step back" and "need a lot of intervention to keep skills in place." R356.

Dr. Levy likewise testified that compensatory tutoring would help E.G. "tremendously." R869. Dr. Levy recommended 700 hours of 1:1 multisensory tutoring based on her academic

assessment of E.G., review of E.G.'s educational records, and extensive experience working with students like E.G. for over 18 years. R867-69. Dr. Levy testified that tutoring for E.G. would use multisensory techniques including the Orton-Gillingham methodology. R217, 868-69. Dr. Levy calculated 700 hours as approximately 8-10 hours per week correlated with a two-school year time period. R210. Dr. Pass confirmed the reasonableness of 700 hours of tutoring as a remedy for the two-year FAPE denial. R353-55.

D.C.G. and E.G. testified to why they were seeking tutoring and how it would remedy the FAPE denial. D.C.G. testified that before transferring to Winston, E.G. "always struggled," "every year just got tougher and tougher for her," and she "deteriorated year after year" and "did not want to go to school." R270, 272. E.G. testified, "The thing I remember most about the last three years of schooling before transferring [to Winston] is that I would learn something, then the next day, I could not remember what was taught, because I could not retain the information." R870. E.G. testified that every year she would "start off more behind than the year before." R871. E.G. testified that at West End she would be pulled out for extra help, causing her to attend school for longer hours than her peers and miss periods like lunch, art, or music, but she was still struggling. R871-72. E.G. testified that Winston changed her life because the school delivered instruction in a way that made sense for her. R871-72.

D.C.G. testified that while E.G. was making progress at Winston, she still needed to "make up for what she has lost" because she had "fallen behind so much" and needs to "remediate so that when she graduates from high school, she is college ready." R276. E.G. testified that compensatory after-school tutoring would help "make up for all the time" that she lost before coming to Winston.  R304.

The Second Circuit has endorsed an award of compensatory education that "appropriately

addressed the problems with the IEP." *Newington*, 546 F.3d at 123. Here, the tutoring award proposed by Plaintiffs would do the same, affording E.G. the benefit of specialized 1:1 instruction using appropriate strategies for students with dyslexia that she was denied during the 2019-20 and 2020-21 school years due to the DOE's FAPE denial, and would assist her in remediating her deficits in preparation for pursuing her post-secondary goal of attending college and earning a four-year degree.

The DOE attempted to rebut Plaintiffs' evidence on compensatory remedy with testimony from West End school psychologist Kerry-Kay Melbourne. R33-34, 694-96. Ms. Melbourne opined that E.G. did not need compensatory tutoring (R695-96), but her testimony was inadequate to support this conclusion and refute the Parents' evidence showing the need for compensatory relief.

First, as the IHO found, the DOE's FAPE denial included failing to adequately evaluate E.G. and prepare appropriate IEPs offering the services she needed to progress. R43. Ms. Melbourne conducted the 2018 DOE Evaluation, served as the district representative at her March 2021 IEP meeting and reconvene, and thus was involved in the actions that denied E.G. a FAPE. R393, 694-95, 815-16. This calls into question Ms. Melbourne's reliability on the issue of E.G.'s functioning and needs. The DOE's rebuttal case should be viewed with skepticism where the DOE conceded a three-year FAPE denial and proffered an employee involved in that FAPE denial as a purported authority on the student's compensatory education needs. *Cf. M.S. v. Utah Schs. for Deaf and Blind*, 822 F.3d 1128, 1133-36 (10th Cir. 2016) ("Allowing the educational agency that failed or refused to provide the covered student with a FAPE to determine the remedy for that violation is simply at odds with the review scheme set out at § 1415(i)(2)(c).").

Second, unlike Dr. Pass and Dr. Levy, Ms. Melbourne had not conducted recent testing

of E.G. *See* R694-96. Ms. Melbourne (who unlike Dr. Pass and Dr. Levy, did not hold a Ph.D., R694, 867, 923) did not conduct a psychoeducational evaluation of E.G. for the March 2021 IEP meeting, but instead relied on Dr. Pass's 2021 Evaluation. R416-17. Ms. Melbourne did not testify to any personal interaction with E.G. leading up to the March 2021 IEP meeting, and she could not recall which teachers she spoke with in preparation for the meeting. *See* R417, 421, 694-96. Despite her reliance on Dr. Pass's evaluation, Ms. Melbourne rejected Dr. Pass's conclusions regarding E.G.'s level of academic functioning, progress, and need for compensatory tutoring. R695-96. This was unwarranted. Having not evaluated E.G. herself, Ms. Melbourne was in an inferior position to Dr. Pass in assessing E.G.'s functioning and needs.

Third, Ms. Melbourne erroneously concluded that E.G.'s grades evinced functioning "approaching or on grade level." R695. They did not. E.G.'s January 2018 and January 2019 IEPs reported grades in ELA, math, social studies, and science all indicating functioning below grade-level standards; E.G.'s January 2020 IEP reported a mix of grades below standards and barely meeting standards, but D.C.G. received June 2020 progress report grades placing E.G. below standards in ELA and well below standards in math, science, and history. R727, 740, 756, 878; *see* note 7 *supra*. E.G.'s March 2021 IEP reported below-standards grades in English, geography, and science, and Ms. Melbourne admitted that E.G. was below grade level in West End's mastery standards for these subjects. R419, 893. Although E.G.'s math grade was described as exceeding standards, the March 2021 IEP reported that in that subject E.G. was experiencing "significant challenges with learning and applying new concepts" and exhibited "difficulty with accurately computing basic mathematical operations and solving multi-step word problems." R893, 894. Furthermore, E.G.'s grades, including the passing grades assigned on her DOE transcript (R642), must be assessed in light of West End's "reengagement" system.

E.G. explained the reengagement system as follows: "When I was taking tests or doing assignments, I would get multiple chances to do it over again until my grades improved. . . While this was nice, it felt like I did not earn the grade, because I could work on it over and over again even when I did not always understand it. . . . I would just have to memorize the correct answers from the test before to get a better grade." R871. D.C.G. testified that the system allowed students to "'re-engage' on assignments and tests to improve their grades" and provided "a false appearance of actual progress." R875-76; *see also* R887 (January 25, 2019 e-mail from D.C.G. to West End questioning whether reengagement resulted in E.G.'s grades inaccurately indicating progress); R894 (March 2021 IEP acknowledgement of reengagement used in ELA and math).

Ms. Melbourne conceded the existence of the reengagement system, but professed unawareness of whether it could change test grades. R472-74. Ms. Melbourne testified that she did not know "the criteria for classroom tests and how they grade it or what they grade it against." R474. Given the conceded existence of the reengagement system (which would not be available to E.G. in a post-secondary setting), D.C.G.'s and E.G.'s unrebutted testimony about how it worked, and Ms. Melbourne's lack of knowledge about what E.G.'s grades were based on, her reliance on E.G.'s grades as a basis for denying compensatory tutoring must be rejected.

Fourth, Ms. Melbourne erroneously reasoned that E.G. did not need compensatory tutoring because the DOE put her on track for a diploma. R695. Earning a Regents diploma typically requires both sufficient high school credits and passing five Regents exams. R899. Here, the DOE's credit assignment and advancement of E.G. from grade to grade was not reflective of grade-level functioning for the same reasons her grades were not, and the New York State Regents exams typically required to show competence in the high school curriculum were waived due to COVID. R642, 899. Furthermore, a student must be provided with needed special

22

education services even when she "has not failed or been retained in a course or grade, and is advancing from grade to grade." 34 C.F.R. § 300.101(c)(1); *see also* 8 N.Y.C.R.R. § 200.4(c)(5). A district's promotion of a student from grade to grade is not irrefutable proof of a FAPE, *Endrew F.*, 580 U.S. at 402 n.2, much less that compensatory education should be denied where the district that promoted the student concedes a three-year FAPE denial.

Fifth, Ms. Melbourne erroneously pointed to the COVID pandemic as a reason not to award E.G. compensatory tutoring. R695. Ms. Melbourne claimed that E.G. "had not received in class instruction" between March 2020 and March 2021 (R695), but D.C.G. testified that E.G. attended a combination of hybrid and remote schooling in the fall of the 2020-21 school year (R878). Ms. Melbourne attempted to blame the drop in reading percentile scores Dr. Pass identified on remote instruction, but those scores – evincing what Ms. Melbourne conceded was "regression in some areas" – were obtained in evaluations conducted five years apart. R695; *see* R798, 817. Ms. Melbourne likewise tried to attribute E.G.'s emotional difficulties to COVID (R695), but Dr. Pass's 2015 Evaluation found that E.G. already experienced "anxiety and sadness over her school performance" at that time (R807). Furthermore, to the extent the DOE's remote learning service delivery during COVID was a contributing factor to E.G.'s academic deficits, that would not counsel against an award of compensatory education. *See* N.Y. State Educ. Dep't, *Compensatory Services for Students with Disabilities as a Result of the COVID-19 Pandemic* (June 2021) (school districts have the responsibility to individually assess the need for compensatory services where the COVID pandemic disrupted the delivery of special education services, even when remote instruction was offered), *available at* https://www.p12.nysed.gov/specialed/publications/2021-memos/compensatory-services-for-students-with-disabilities-result-covid-19-pandemic.pdf. Moreover, notably, the issues with

E.G.'s IEPs, including the inadequacy of ICT and lack of appropriate, specialized 1:1 instruction and remediation, were also present independent of COVID. *See* Points I.A, II.A *supra*.

Finally, Ms. Melbourne was not forthright in responding to the Parents' subpoena for her communications or in her testimony about those communications. The IHO signed a subpoena directing the DOE to produce such communications, and Parents' counsel repeatedly sought them prior to Ms. Melbourne's testimony, but they were not produced. R196-201, 363-65, 379-87, 921-22. At the hearing, Ms. Melbourne testified, "I do not keep my emails." R431. This testimony is refuted by the record, as the DOE offered into evidence one of Ms. Melbourne's e-mails dated April 19, 2021 that she possessed and forwarded nearly a year later on March 29, 2022. R692-93.

Ms. Melbourne testified that she had "nothing beyond" her communications with the DOE attorney (R431-32), but discovery has shown that Ms. Melbourne was a party to other existing written communications concerning E.G. Plaintiffs submit with this motion a declaration of counsel attaching as an exhibit ("Decl. Ex. A") the additional communications sent by or to Ms. Melbourne concerning E.G. that Defendants produced pursuant to the Court's June 1, 2023 Order (Docket No. 20). Among other things, the e-mails document communications Ms. Melbourne had with D.C.G. and West End staff leading up to E.G.'s March 2021 IEP meeting and reconvene, including Ms. Melbourne's receipt on March 3, 2021 of the EBL Coaching assessment, together with the 2021 Evaluation of Dr. Pass. Decl. Ex. A at 7.[15] Ms. Melbourne testified that as of the reconvene meeting, there was "no indication or request" for compensatory services (R396), yet Dr. Levy's EBL Coaching assessment clearly recommended tutoring to address E.G.'s deficits (R578), and Dr. Pass recommended tutoring for E.G. as well (R827).

---

[15] In the March 3, 2021 e-mail from D.C.G. to Ms. Melbourne, the 2021 EBL and SUNY evaluations were attached as one document. Decl. Ex. A at 7. The DOE likewise submitted the documents into evidence together, as one exhibit.  R578-93.

Plaintiffs request that the Court accept Decl. Ex. A as additional evidence, as the DOE wrongly withheld Ms. Melbourne's communications at the hearing, and the existence of the additional communications undermines Ms. Melbourne's credibility. *See* R196-201, 363-65, 379-87, 431-32, 921-22; *see also* 20 U.S.C. § 1415(i)(2)(C)(ii) (IDEA authorization for court's acceptance of additional evidence).

**B.      The IHO Decision Denying Compensatory Education Is Not Entitled to Deference and Should Be Reversed.**

The IHO denied Plaintiffs' request for compensatory education in one cursory paragraph, finding the relief unnecessary because Winston was an appropriate placement for E.G. for the 2021-22 school year and she made progress there in that year. R43-44. The IHO acknowledged that compensatory education should aim to return the student to the position she would have occupied but for the FAPE denial (R42), but did not award relief to accomplish that. The IHO denied compensatory education for two prior years of the FAPE denial simply because in year three Plaintiffs placed E.G. in an appropriate private school at their own financial risk. The IHO's decision was legally and factually erroneous, inadequately reasoned, and against the clear weight of the evidence. It is not entitled to deference and should be reversed.

**1.      Parents Who Place Their Child in an Appropriate Private School to Mitigate the Harm of an Ongoing, Multi-Year FAPE Denial Do Not Thereby Forfeit the Right to Compensatory Education for the Prior Period of FAPE Deprivation.**

Parents like Plaintiffs whose child has been denied a FAPE can place the student in a private school and obtain payment for the tuition where the private placement is appropriate and the equities favor them. 20 U.S.C. § 1412(a)(10)(C); *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 12, 16 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369, 374 (1985). Awards of tuition and compensatory education are not mutually exclusive. *VW v. N.Y. City Dep't of Educ.*, No. 21 Civ. 6317 (AT), 2022 WL 3448096, at *7 (S.D.N.Y. Aug. 17, 2022)

(awarding both tuition and compensatory services); *see also E. Lyme*, 790 F.3d at 454 (noting multiple forms of relief available under the IDEA).

A tuition award and compensatory education typically serve different purposes. While tuition is not foreclosed as a compensatory remedy for a past FAPE deprivation (*see, e.g.*, *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1286 (11th Cir. 2008)), it typically is a year-for-year remedy awarded to address the denial of FAPE in the same school year the student attends the private school. The IDEA's tuition reimbursement provision focuses on whether FAPE was offered at the time of the private placement based on the most recent IEP meeting held for that school year. 20 U.S.C. § 1412(a)(10)(C). This provision is "elucidative rather than exhaustive" of the tuition remedies available under the IDEA, *Forest Grove Sch. Dist. v. T.A.*, 129 S. Ct. 2484, 2493 (2009), but it illustrates the fact that tuition is typically a remedy for a FAPE violation in the same year the student attends the private school.[16] *See also Burlington*, 471 U.S. at 369 (authorizing tuition award where private placement "rather than a proposed IEP, is proper under the Act"); *Brennan v. Reg'l Sch. Dist. No. 1 Bd. of Educ.*, 531 F. Supp. 2d 245, 264 (D. Conn. 2008) (parents may obtain payment for a year of private school tuition if "the IEP

---

[16] For some of the many cases within the Second Circuit exemplifying this situation, and awarding tuition payment as remedy for the denial of FAPE in the year the student attended the private school, see, e.g., *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152 (2d Cir. 2021); *Bd. of Educ. of Wappingers Cent. Sch. Dist. v. D.M.*, 831 F. App'x 29 (2d Cir. 2020) (summary order); *R.N. v. Bd. of Educ. for Iroquois Cent. Sch. Dist.*, 801 F. App'x 35 (2d Cir. 2020) (summary order); *T.K. v. N.Y. City Dep't of Educ.*, 810 F.3d 869 (2d Cir. 2016); *C.F. v. N.Y. City Dep't of Educ.*, 746 F.3d 68 (2d Cir. 2014); *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826 (2d Cir. 2014); *P.K. v. N.Y. City Dep't of Educ.*, 526 F. App'x 135 (2d Cir. 2013) (summary order); *R.E. v. N.Y. City Dep't of Educ.*, 694 F.3d 167, 178-82, 193-94 (2d Cir. 2012) (tuition awarded for student R.K.); *M.H. v. N.Y. City Dep't of Educ.*, 685 F.3d 217, 246-55 (2d Cir. 2012) (tuition awarded for student P.H.); *E.S. v. Katonah-Lewisboro Sch. Dist.*, 487 F. App'x 619, 621-23 (2d Cir. 2012) (summary order); *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356 (2d Cir. 2006); *A.W. v. N.Y. City Dep't of Educ.*, 287 F. Supp. 3d 420 (S.D.N.Y. 2018); *J.E. v. N.Y. City Dep't of Educ.*, 229 F. Supp. 3d 223 (S.D.N.Y. 2017); *T.Y. v. N.Y. City Dep't of Educ.*, 213 F. Supp. 3d 446 (E.D.N.Y. 2016); *S.Y. v. N.Y. City Dep't of Educ.*, 210 F. Supp. 3d 556 (S.D.N.Y. 2016); *E.H. v. N.Y. City Dep't of Educ.*, 164 F. Supp. 3d 539 (S.D.N.Y. 2016); *G.B. v. N.Y. City Dep't of Educ.*, 145 F. Supp. 3d 230 (S.D.N.Y. 2015); *F.B. v. N.Y. City Dep't of Educ.*, 132 F. Supp. 3d 522 (S.D.N.Y. 2015); *Scott ex rel. C.S. v. N.Y. City Dep't of Educ.*, 6 F. Supp. 3d 424 (S.D.N.Y. 2014); *Mr. and Mrs. A. ex rel. D.A. v. N.Y. City Dep't of Educ.*, 769 F. Supp. 2d 403 (S.D.N.Y. 2011). Just in 2023, the SRO decisions awarding this relief include Appeal Nos. 23-095, 23-064, 23-062, 23-056, 23-052, 23-041, 23-039, 23-027, and 23-009; *see also* SRO Appeal No. 19-018, at 17-19 (noting complications with private school placement as a compensatory remedy and expressing a preference for the award of discrete compensatory services to be provided in addition to an appropriate IEP).

for that year denied a FAPE").

In the typical case, "an award of private-school placement is not, like the tutoring award, retrospective relief designed to compensate for *yesterday's* IDEA violations, but rather prospective relief aimed at ensuring that the child receives *tomorrow* the education required by IDEA." *Branham v. Gov't of the Dist. of Columbia*, 427 F.3d 7, 11 (D.C. Cir. 2005) (emphasis in original). Compensatory education, by contrast, serves "to compensate a student who was actually educated under an inadequate IEP" and "catch-up the student to where he should have been absent the denial of a FAPE." *Brennan*, 531 F. Supp. 2d at 265; *see also VW*, 2022 WL 3448096, at *6 (distinguishing compensatory education from FAPE for upcoming school year).

Here, moreover, the record did not show, and the IHO did not find, that Winston provided services to E.G. beyond those required for an appropriate education in the 2021-22 school year. *See* R43-44. The IHO cited Winston's "individualized and specialized curriculum and services," including what the IHO described as "SETSS,"[17] and E.G.'s "significant progress." R43-44. Specialized instruction individually tailored to address a student's needs and designed to yield progress are what is required for a private placement to be appropriate under the *Burlington/Carter* standard. *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 365 (2d Cir. 2006). E.G.'s 2021-22 Winston placement was akin to receiving an appropriate IEP for that year, not make-up services for the prior two-year FAPE deprivation. *See Boose v. Dist. of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015) ("[A]n IEP 'carries no guarantee of undoing damage done by prior violations,' and that plan alone cannot take the place of adequate

---

[17] The IHO's reference to SETSS is not correct because SETSS is a DOE service provided by a special education teacher. *See* note 5 *supra*. The IHO did not explain what she meant or cite to the record in asserting that Winston provided E.G. with SETSS. R43-44. Although not referenced in the IHO's decision, Winston's educational program for all of its students includes a 1:1 "Focus" class. R851, 866. E.G.'s Focus class was taught by a speech teacher and targeted her "expressive language, written expression, academic problem-solving skills, and her reading comprehension." R866. This was not a supplemental service added to E.G.'s program at Winston; it was an inherent part of Winston's program for educating students with learning disabilities. *See* R851, 866.

compensatory education." (citation omitted) (quoting *Reid*, 401 F.3d at 523)).

E.G. should not be denied a remedy for the first two years of the FAPE denial because Plaintiffs did not undertake the financial risk of a private placement until year three. *Cf. Streck*, 408 F. App'x at 415 (right to compensatory relief "cannot turn" on parent's "ability to finance the costs of the education awarded"); *see* R876, 880 (D.C.G. testimony that Parents had "limited finances," Winston tuition was a "big risk," and they tried to provide tutoring but "could not financially afford" the support E.G. required).

To hold otherwise would incentivize the denial of FAPE and the failure to make students whole for FAPE violations. *Cf. E. Lyme*, 790 F.3d at 456 (refusing to interpret IDEA in a way that would incentivize its violation and allow the district to fund less services than it should have and that the student needed); *see also Jefferson County Bd. of Educ. v. Breen,* 853 F.2d 853, 857–58 (11th Cir. 1988) ("Compensatory education, like retroactive reimbursement, is necessary to preserve" the right to a FAPE, as "[w]ithout it, the child's right would depend upon his or her parent's ability to fund the education during the years of administrative proceedings and federal court litigation. . . . [P]roviding a compensatory education should serve as a deterrent against states unnecessarily prolonging litigation in order to decrease their potential liability.").

### 2. The IHO Decision Was Against the Clear Weight of the Evidence.

For the reasons set forth in Point II.A *supra*, the DOE did not satisfy its burden of proof on compensatory remedy, and the preponderance of the evidence clearly demonstrates the appropriateness of a compensatory tutoring award. The IHO failed to hold the DOE to its burden of proof and inappropriately rejected, without adequate analysis, the substantial evidence proffered by Plaintiffs in support of awarding compensatory relief. *See* R43-44.

The IHO appeared to discount Dr. Pass's testimony because Dr. Pass did not reevaluate

E.G. after she enrolled at Winston and purportedly "was not aware of the specific level of intervention" E.G. received in the previous two years. R38. This was unwarranted. Dr. Pass evaluated E.G. during her ninth-grade year at West End, in the middle of the DOE's three-year FAPE denial. R817. Dr. Pass had previously evaluated E.G. in 2015 and was able to compare the results of the two evaluations to track E.G.'s progress over time. R798, 822, 826. The IDEA requires reevaluations once every three years, so Dr. Pass's 2021 Evaluation was certainly current within the meaning of the Act. 20 U.S.C. § 1414(a)(2)(B)(ii). Moreover, Dr. Pass's 2021 Evaluation documented special education services that E.G. received while attending public school, and Dr. Pass was familiar with Winston's educational program. R356, 817-18, 941.

The IHO offered no reasons for rejecting the testimony of Dr. Levy, D.C.G., and E.G. regarding compensatory tutoring. *See* R38-39, 43-44. The IHO noted Ms. Melbourne's opinion that tutoring was not needed, but did not discuss her testimony in the portion of the decision denying compensatory services. R41, 43-44. To the extent the IHO relied on Ms. Melbourne's testimony to deny relief, it was error for the reasons set forth in Point II.A *supra*. In addition, the IHO erroneously failed to require the DOE to comply with the subpoena for Ms. Melbourne's e-mails, violating the Parents' due process rights. *See* R381-86; 8 N.Y.C.R.R. § 200.5(j)(3)(iv); *cf. Y.A. v. N.Y. City Dep't of Educ.*, No. 15-cv-05790 (CM), 2016 WL 5811843, at *9 (S.D.N.Y. Sept. 21, 2016) (finding DOE's failure to turn over documents parent was entitled to under IDEA and "IHO's refusal to ensure their availability" violated parent's rights).

The IHO's brief analysis cited the testimony of Winston's dean, Evan Schlissel, as a basis for denying tutoring, but it did not support that result. *See* R43-44. First, the appropriateness of E.G.'s placement at Winston for the 2021-22 school year did not disprove the need for compensatory tutoring, for the reasons set forth in Point II.B.1 *supra*. Second, the IHO appeared

to erroneously rely on speculative testimony by Mr. Schlissel about E.G.'s future progress at Winston and the hypothetical possibility that she could reach grade level in two more years if she internalized the strategies taught by the school. R40, R256-57. Placement at Winston beyond the 2021-22 school year was not at issue before the IHO, and the IHO did not award funding for any additional year. R34, 45. Even in the best-case scenario posed by Mr. Schlissel's hypothetical, E.G. would remain below grade level until the end of twelfth grade. This was not appropriate for a student who, as Dr. Pass testified, already would have been on grade level but for the DOE's FAPE denial. R941; *see* USDOE 2015 Letter *supra* (importance of closing the gap between grade level and academic functioning). E.G.'s deficits had not been alleviated such that compensatory education was unwarranted. *See M.T.*, 2022 WL 16857176, at **7-8. E.G. should have been awarded tutoring to remediate her academic deficits as soon as possible and support her in preparing for her post-secondary goal of attending college and earning a four-year degree.

C.      **The SRO Decision Is Not Entitled to Deference and Should Be Reversed.**

On appeal, the SRO declined to reverse the IHO on the stated grounds that E.G. "made progress in the district program and was passing from grade to grade" and was "flourishing" at Winston. R30. The SRO Decision is not entitled to deference and should be reversed.

First, the SRO erroneously made an end-run around the IHO's unappealed, well-founded FAPE findings to deny relief. The IHO's FAPE ruling included findings that E.G. was not making appropriate progress, the DOE knew that, and it failed to appropriately evaluate E.G. and offer IEPs that would allow her to make adequate progress. R43. The IHO's FAPE findings were not cross-appealed by the DOE and therefore were final and binding. R18, 83-92; *see* 34 C.F.R. § 300.514(a); 8 N.Y.C.C.R. § 200.5(j)(5)(v). The SRO was bound by those findings. *See M.Z. v. N.Y. City Dep't of Educ.*, No. 12 Civ. 4111 (KBF), 2013 WL 1314992, at *6 (S.D.N.Y. Mar. 21,

2013) (because IHO decision is binding unless appealed to the SRO, "parties must appeal (or cross-appeal) any adverse findings of the IHO to preserve those arguments"); *J.F. v. N.Y. City Dep't of Educ.*, No. 12 Civ. 2184 (KBF), 2012 WL 5984915, at *6 (S.D.N.Y. Nov. 27, 2012) ("[E]ven a successful party under the IHO's ruling must cross-appeal an adverse particular finding to the SRO . . . . A particular finding that is not cross-appealed is waived, and the IHO's decision in that particular is final and binding on the parties.").

Furthermore, the IHO's finding that E.G. was not making adequate progress was well-founded and should not have been disturbed. The testimony of Dr. Pass, Dr. Levy, Winston Dean Evan Schlissel, D.C.G., and E.G., as well as Dr. Pass's 2015 and 2021 Evaluations, all showed that E.G. was not making appropriate progress. *See* Points I, II.A *supra*. In finding that E.G. made adequate progress, the SRO erroneously relied on E.G.'s grades despite relegating to a footnote an acknowledgement that, at the time of the March 2021 IEP meeting, E.G.'s grades in three out of four subjects were below grade standards. R23 & n.20. The anecdotal reports from E.G.'s teachers cited by the SRO did not refute the evidence showing that E.G. was functioning below grade level, and the teachers did not testify and were not subject to cross-examination. *See* R27-29. The SRO also relegated to a footnote an acknowledgement of West End's reengagement system and did not analyze how it impacted the interpretation of E.G.'s grades. R23 n.19. The SRO Decision nowhere acknowledged the waiver of E.G.'s Regents exams or assessed how that waiver impacted the assessment of E.G.'s progress. *See* R7-30.

Second, the SRO inappropriately rejected the testimony of Dr. Pass. The SRO admitted that Dr. Pass's evaluations and testimony showed that E.G. "was not making as much academic progress as may have been expected considering her cognitive testing," but found that evidence trumped by E.G.'s enrollment in challenging courses and advancement from grade to grade. R29.

This was clear error. E.G. is an intelligent young woman, but she has significant academic deficits. E.G. was enrolled in a gifted program during elementary school, yet still struggled academically. R797, 798, 874. At West End, E.G. was permitted to take the same courses as her non-disabled peers, including an A.P. course and courses that were challenging.[18] Despite being enrolled in such courses, E.G. struggled with underlying academic skills, was functioning below grade level, and needed remediation. R825-27.

While advancement from grade to grade can be evidence of sufficient progress, it is not necessarily so. *Endrew F.*, 580 U.S. at 402 n.2 (rejecting "inflexible rule" and holding that grade advancement is not irrefutable proof of a FAPE); *Hall v. Vance County Bd. of Educ.,* 774 F.2d 629, 636 (4th Cir. 1985) (no error in district court "discounting" student's "promotions in light of the school's policy of social promotion" and student's "test scores and independent evaluations"); *D.B. v. Bedford County School Dist.,* 708 F. Supp. 2d 564, 584 (W.D. Va. 2010) (social promotion did not overcome evidence of lack of progress). To hold otherwise would eviscerate the IDEA's due process protections and prevent parents from challenging a district's assessments and decisions based on independent evaluations like Dr. Pass's. *See* 34 C.F.R. § 300.502(c); *Schaffer v. Weast*, 546 U.S. 49, 60–61 (2005) (noting importance of parent's access to independent expert to challenge district's decisions).

Third, the SRO erroneously disregarded Dr. Levy's testimony regarding E.G.'s academic deficits and need for compensatory tutoring. R27. The SRO faulted Dr. Levy's assessment because she did not base it on information secured directly from E.G.'s teachers, observe E.G. in school, or create test reports. R27. This was error. In addition to testing E.G. personally, Dr.

---

[18] The IDEA provides "protections for students with high cognition and disabilities who require special education and related services to address their individual needs." U.S. Dep't of Educ., Office of Spec. Educ. Programs, Letter to Anonymous (Jan. 13, 2010), *available at* https://sites.ed.gov/idea/files/idea/policy/speced/guid/idea/letters/2010-1/redacteda011310eval1q2010.pdf.

Levy reviewed Dr. Pass's 2015 and 2021 Evaluations, the 2018 DOE Evaluation, and four of E.G.'s IEPs. R869. Dr. Levy documented her testing results in a March 3, 2021 letter and in her affidavit and live testimony. R202-33, 578, 867-79. Dr. Levy's assessment that E.G. was academically below grade level was confirmed by Dr. Pass and Winston Dean Schlissel. R241, 930. The SRO cited no valid basis to reject Dr. Levy's assessment and recommendation.

Fourth, the SRO improperly relied on the testimony of Ms. Melbourne to deny compensatory education. R26-30. Ms. Melbourne's testimony should have been rejected for all of the reasons set forth in Point II.A *supra*. The SRO, like the IHO, failed to hold the DOE to its burden of producing adequate, reliable evidence showing that no remedy was warranted for its FAPE denial in order to defeat the Parents' compensatory education claim. N.Y. Educ. L. § 4404(1)(c). Also like the IHO, the SRO failed to hold the DOE accountable for its failure to produce Ms. Melbourne's subpoenaed communications, in violation of the Parents' due process rights. R19-20. The SRO additionally failed to find Ms. Melbourne's credibility impacted by her lack of forthrightness about her e-mails. *See* R19-20, 26-29.

Finally, the SRO improperly denied compensatory relief based on the testimony of Evan Schlissel and the appropriateness of E.G.'s placement at Winston. R29-30. This was error for the reasons set forth in Point II.B.1-2 *supra*. Notably, despite citing Mr. Schlissel's speculative testimony about the possibility that E.G. could graduate on grade level, the SRO made no mention of Mr. Schlissel's testimony that E.G. entered Winston "s" and "far below 10th grade level." *See* R29-30, 241. The SRO also failed to consider that the IHO awarded Winston tuition only for the 2021-22 school year, not the remainder of E.G.'s high school education. *See* R29-30. E.G. was entitled to make progress during the remainder of high school <u>and</u> to have received a FAPE in the 2019-20 and 2020-21 school years.

Federal courts have overturned administrative decisions that failed to award adequate and appropriate compensatory relief for the denial of FAPE. *E.g., M.T.*, 2022 WL 16857176, at *9; *see also B.D. v. Dist. of Columbia*, 817 F.3d 792, 799 (D.C. Cir. 2016); *Jana K. v. Annville-Cleona Sch. Dist.*, 39 F. Supp. 3d 584, 605 (M.D. Pa. 2014); *Brown v. Dist. of Columbia*, 568 F. Supp. 2d 44, 55 (D.D.C. 2008); *cf. also L.O. v. N.Y. City Dep't of Educ.*, 822 F.3d 95, 101–02, 123-24 (2d Cir. 2016) (overturning both the IHO and SRO to rule for the parents on FAPE in an IDEA case). Here, the SRO Decision is contrary to the IHO's unappealed, well-founded FAPE findings, legally erroneous, and against the clear weight of the evidence. It is not entitled to deference and should be reversed.

### POINT III
### EQUITABLE CONSIDERATIONS FAVOR
### AN AWARD OF COMPENSATORY EDUCATION

Equitable considerations bear on the appropriate relief to be awarded under the IDEA. *Burlington*, 471 U.S. at 374. As the IHO found, the equities favor the Parents in this matter. R44-45. The IHO's equities ruling was not appealed by the DOE. R18, 83-92. For all School Years at Issue, the Parents expressed their concerns, shared independent evaluations, and cooperated with the DOE in trying to secure a FAPE for E.G. *See* R44-45, 873-81.

The DOE, by contrast, has acted inequitably. It was inequitable for the DOE to fail to evaluate E.G. appropriately and deny her a FAPE for three years, depriving her of an appropriate public school education and necessitating her placement at Winston. When Plaintiffs filed the DPC, the DOE did not assign an IHO for nearly four months, illegally delaying the case. Complaint ¶134 (ECF No. 1); Answer ¶134 (ECF No. 14); R34; *see* 34 C.F.R. § 300.515(a); 8 N.Y.C.R.R. § 200.5(j)(3)(i)(a)(1), (j)(5). During the hearing, the DOE failed to comply with the IHO's lawfully issued document subpoena, further violating Plaintiffs' due process rights. *See*

R381-86, 921-22. The DOE then asserted contrary positions to try to deny E.G. all relief for the three-year conceded FAPE denial: the DOE argued both that the Parents failed to prove Winston was an inappropriate placement for E.G. (so tuition would be denied) and E.G. was making so much progress at Winston that tutoring should be denied. R96-99. The DOE's position has been that it does not want to do anything to remedy the denial of FAPE.

E.G. deserves to be made whole for the DOE's FAPE denial for the 2019-20 and 2020-21 school years. Plaintiffs ask the Court to award E.G. the 700 hours of tutoring they requested in the administrative proceedings, as the preponderance of the evidence supports that award. Plaintiffs request that the tutoring hours be available until exhausted and funded at reasonable market rate to ensure that E.G. can access them. Plaintiffs request that the Court use its broad equitable authority under the IDEA to award "such relief as the court determines is appropriate," 20 U.S.C. § 1415(i)(2)(C)(iii), and afford E.G. a full remedy for the FAPE denial.

## **CONCLUSION**

For the reasons set forth above, we respectfully request that the Court overturn the SRO's decision and award Plaintiffs 700 hours of compensatory tutoring at reasonable market rate, with the hours available until they have been expended, and any further equitable relief that the Court determines is appropriate.

Dated: August 14, 2023

THE LAW OFFICE OF ELISA HYMAN, P.C

By: _____S/_____
Erin McCormack-Herbert, Senior Attorney
The Law Office of Elisa Hyman, P.C.
1115 Broadway, 12th Floor
New York, NY 10010
Phone: (646) 572-9056
emccormack@specialedlawyer.com