**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
D.C.G. and D.G., *individually and as next*
*friend for their child E.G.,*

                                     Plaintiffs,                    **REPORT &**
                                                                   **RECOMMENDATION**

                      -against-
                                                                   **23-cv-1337 (JPC) (JW)**

NEW YORK CITY DEPARTMENT OF
EDUCATION, *et al.,*

                                     Defendants.
-------------------------------------------------------------------X

**To the Honorable John P. Cronan, United States District Judge:**

This action was referred to this Court for general pretrial supervision, as well
as for a report and recommendation on dispositive motions.  Dkt. No. 15.  Plaintiffs
commenced this action pursuant to, *inter alia*, the Individuals with Disabilities
Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2)(A).  Dkt. No. 1 ("Complaint" or
"Compl.").  Plaintiffs seek, among other remedies, reversal of a final administrative
decision of a New York State Review Officer ("SRO") denying Plaintiffs compensatory
educational services as a remedy for the denial of a free and appropriate public
education ("FAPE") for their child E.G. for the 2019-2020 and 2020-2021 school years
("SY").  Id. at 35-36.  Before this Court are cross-motions for partial summary
judgment.

For the reasons stated below, this Court recommends that Plaintiffs' motion
for partial summary judgment be DENIED and Defendants' motion for partial
summary judgment be GRANTED.

## BACKGROUND[1]

**Factual Background**

Plaintiffs are the parents of E.G., a seventeen year old high school student who has been classified by Defendant New York City Department of Education ("DOE") as having a learning disability.  Dkt. No. 23-1 at 32-33, 35.[2]  E.G. has been diagnosed with specific learning disorders in reading (dyslexia), written expression, and math, as well as generalized anxiety disorder.  Id. at 11.  E.G. attended public school through the end of ninth grade (SY 2020-2021).  Id. at 35.  For SY 2021-2022, Plaintiffs enrolled E.G. in Winston Preparatory School ("Winston") for her tenth grade year.  Compl. ¶ 128.

In April 2015, during E.G.'s third grade year, DOE conducted a psychoeducational evaluation of E.G., which found that she was functioning in the average range of intellectual and cognitive ability.  Dkt. No. 23-3 at 93-95.  However, the Specific Learning Disability Justification noted that E.G. had "made minimal progress with regard to classroom . . . assessments" and had "difficulty making inferences," so DOE determined that E.G. was a student who required special education support.  Id. at 99.  Beginning in third grade, DOE prepared individualized education programs ("IEPs") for E.G. which recommended Special Education Teacher Support Services ("SETSS").  Pl. SMF ¶ 22.  E.G. was placed in DOE's gifted and talented program from third through fifth grade.  Id. ¶ 20.

---

[1] The following facts are drawn primarily from the administrative record (Dkt. 23 (the "Record")), the Complaint, and Plaintiffs' Local Rule 56.1 Statement of Material Facts (Dkt. No. 29 ("Pl. SMF")). Facts from Pl. SMF are admitted in Defendants' response to Pl. SMF (Dkt. No. 49 ("Def. RSMF")) and are not materially in dispute, unless otherwise noted.
[2] Page numbers refer to those generated by ECF, where applicable.

In SY 2016-2017, during E.G.'s fifth grade year, DOE held an IEP meeting and recommended SETSS four periods per week. Dkt. No. 23-3 at 24. During E.G.'s sixth grade year (SY 2017-2018), she enrolled at West End Secondary School ("West End"). Pl. SMF ¶ 34. West End did not provide SETSS to E.G. during SY 2017-2018, and instead placed E.G. in an Integrated Co-Teaching ("ICT") classroom. Id. ¶¶ 35-37.

In January 2018, DOE school psychologist Kerry-Kay Melbourne concluded that E.G.'s academic skills were "on or approaching grade level" after conducting an educational evaluation. Dkt. No. 23-4 at 18-19. The January 2018 IEP reported E.G.'s grades as: English Language Arts ("ELA") 2.5, math 2.3, science 2.7, and social studies 2.6. Dkt. No. 23-3 at 31. Under DOE's 1-4 grading scale, a grade of "1" is well below standards, a grade of "2" is below standards, a grade of "3" is proficient, and a grade of "4" is excellent. Pl. SMF ¶ 41. The January 2018 IEP states that E.G. reported experiencing "confusion" in class and expressed a desire for 1:1 assistance. Dkt. No. 23-3 at 33. The January 2018 IEP did not offer E.G. 1:1 tutoring or academic services. Id. Instead, the January 2018 IEP changed E.G.'s recommendation from SETSS to placement in an ICT class. Id. at 38.

During E.G.'s seventh grade year in January 2019, Plaintiff D.C.G. expressed concern to DOE about E.G.'s performance on New York State tests, her ability to pass exams required to graduate high school, and the lack of a co-teacher in all of E.G.'s mandated ICT classes. Pl. SMF ¶ 53. The January 2019 IEP did not recommend 1:1 academic services or tutoring. Id. ¶ 52.

**SY 2019-2020**

In the fall of E.G.'s eighth grade year, Plaintiff D.C.G. sent an email to West End staff informing them that E.G. "expressed [] anxiety about returning to school and displayed [] low self[-]esteem about her academic abilities[,]" describing herself as "stupid." Dkt. No. 23-4 at 89. E.G.'s IEP recommended her continued placement in the ICT class, without recommendations for 1:1 academic services or tutoring. Pl. SMF ¶¶ 56-57. Additionally, in March 2020, West End closed for in-person instruction due to the COVID-19 pandemic. Id. ¶ 58. Plaintiff D.C.G. received a progress report dated June 26, 2020 listing grades of 2.4 in ELA, 1.7 in Algebra, 1.3 in Living Environment, and 1.5 in U.S. History. Id. ¶ 60. E.G.'s permanent record did not contain final grades for the courses, but showed that E.G. received credit for English 9, US History, Algebra, and Living Environment. Dkt. No. 23-1 at 24. Three Regents exams that E.G. would have taken during eighth grade were waived due to the COVID-19 pandemic. Pl. SMF ¶ 63.

**SY 2020-2021**

In E.G.'s ninth grade year (SY 2020-2021), E.G. attended a combination of hybrid and remote learning. Pl. SMF ¶ 65. E.G. underwent a psychoeducational evaluation (the "Pass 2021 Evaluation") conducted by licensed psychologist and certified school psychologist Dr. Lisa Pass, Ph.D. at SUNY College of Optometry University Eye Center ("SUNY"). Id. ¶ 66. E.G.'s intellectual functioning tested in the high end of the average range. Id. ¶ 67. In the Pass 2021 Evaluation, E.G. was diagnosed with:

> "Specific Learning Disorder with impairment in reading (dyslexia), reading fluency, reading comprehension, moderate; Specific Learning Disorder with impairment in written expression, spelling, grammar, punctuation, writing fluency, moderate; Specific Learning Disorder with impairment in mathematics, calculation, problem solving, math fluency, moderate; and Generalized Anxiety Disorder."

Id. ¶ 74.  The same year, E.G. was also assessed by Emily Levy, Ph.D., the Founder and Director of EBL Coaching and a provider of tutoring to students with disabilities ("Levy 2021 Assessment").   Id. ¶ 80.   The Levy 2021 Assessment "*strongly recommend*[ed] that [E.G.] receive 700 hours of one-on-one multi-sensory tutoring[.]" Dkt. No. 23-2 at 485 (emphasis in original).

On March 6, 2021, Plaintiff D.C.G. provided DOE school psychologist Kerry-Kay Melbourne with a letter documenting the Levy 2021 Assessment.  Pl. SMF ¶ 86. On March 23, 2021, during an IEP meeting, Plaintiffs requested placement in a non-public school for E.G., but DOE rejected the request and recommended E.G.'s continued placement in ICT.  Id. at ¶¶ 89-90.  The IEP created after the meeting did not recommend SETSS, 1:1 academic services, or tutoring.  Id. ¶ 91.  The March 2021 IEP designated E.G.'s grades for English, AP Human Geography, and Earth Science as "below grade standards," and E.G.'s grades for Algebra II as "exceeds grade standards."  Id. ¶ 96.  E.G.'s permanent record shows that she finished SY 2020-2021 with a cumulative average of 80.50 percent and earned 21 credits towards graduation. Dkt. No. 23-1 at 26.

**SY 2021-2022**

On August 25, 2021, Plaintiffs provided written notice to DOE of their intention to place E.G. at Winston and seek payment for tuition and an award of

compensatory education. Pl. SMF ¶¶ 103-104. E.G. attended Winston for tenth grade and received placement in a small class of students with similar learning profiles as well as a daily 1:1 focus class. Pl. SMF ¶ 106. E.G.'s class included a cohort of nine students comprised of both 10th and 11th graders. Dkt. No. 23-1 at 29. E.G.'s fall progress report at Winston printed on January 12, 2022, included grades ranging from a "B-" to an "A," and her teachers provided detailed descriptions of her performance in various classes. Dkt. No. 23-4 at 42-52.

On September 1, 2021, Plaintiffs filed a due process complaint, through counsel, under IDEA alleging that DOE denied E.G. a FAPE for SYs 2019-2020, 2020-2021, and 2021-2022 by, *inter alia*, failing to adequately evaluate E.G.; failing to recommend sufficient SETSS, 1:1, and/or small-group instruction; failing to recommend after-school tutoring; and continuing to recommend placement in an ICT setting that was not appropriate for E.G.'s educational needs. Id. ¶ 107. Defendants disputed allegations in the complaint. Def. RSMF at ¶ 107.

An impartial hearing officer ("IHO") was assigned on December 2021 and the IHO held hearings on multiple dates between February 18 and June 23, 2022. Pl. SMF at ¶ 110; Dkt. No. 23-1 at 34. During the hearings, Defendant DOE conceded that it denied E.G. a FAPE for SYs 2019-2020, 2020-2021, and 2021-2022. Pl. SMF at ¶¶ 110, 113. The IHO heard testimony from 6 witnesses during the hearing. Pl. SMF at ¶¶ 115, 136, 146. Plaintiffs presented witnesses including Evan Schlissel, Academic Dean at Winston, Dr. Levy, Dr. Pass, D.C.G., and E.G. Pl. SMF at ¶¶ 115,

136.  Defendants presented rebuttal testimony from DOE school psychologist Kerry-Kay Melbourne.  Pl. SMF at ¶ 146.

At a hearing, DOE school psychologist Melbourne testified that West End allowed for a "re-engagement" program whereby students were able to submit an assignment, have a teacher review it and provide feedback, and then resubmit the assignment applying the teacher's feedback.  Dkt. No. 23-1 at 23 n. 19.

E.G. testified that Winston changed her life and made her excited about learning. Pl. SMF ¶ 129.  Dr. Levy testified that compensatory tutoring would help E.G. "tremendously" and recommended 700 hours of one-to-one multisensory tutoring for E.G. Pl. SMF at ¶¶ 116-117.  Evan Schlissel, Academic Dean at Winston testified that E.G. was "far below 10th grade level" when she started attending Winston.  Pl. SMF ¶ 120.  The Dean also testified that E.G. had "made progress in her writing, her reading, her decoding," and that her spring tests would show that "the grade levels at which [E.G. was] functioning . . . [would] have gone up."  Dkt. No. 23-1 at 29-30. Finally, he testified that if E.G. continued to progress at the same rate there was a "very real probability" that she would graduate on grade level.  Id.

On January 28, 2022, the IHO signed a subpoena directing DOE to produce documents including:

> "all communications (including emails and faxes) concerning the Student sent and received by any DOE employee (including but not limited to the CSE administrators, teachers, principal, and the individuals who participated in IEP meetings during the SYs at Issue)."

Pl. SMF ¶ 112.

Later at a hearing on June 8, 2022, Plaintiffs' counsel stated they had not received subpoenaed documents from DOE and the DOE attorney responded in part "[t]hat is outside of the scope of our control, and that's also outside of the scope of our purview." Pl. SMF ¶¶ 146-147. The IHO declined to keep the record open and stated that if Plaintiffs disagreed with the outcome of the case, Plaintiffs could argue the absence of the subpoenaed documents on appeal. Id. ¶ 153.

**Procedural History**

On July 24, 2022, IHO Keila Tennent issued her Findings of Fact and Decision ("IHO Decision") noting that DOE conceded the denial of FAPEs for SYs 2019-2020, 2020-2021, and 2021-2022. Dkt. No. 23-1 at 32-45. The IHO found that Winston was an appropriate placement for E.G., and awarded Plaintiffs payment for E.G.'s tuition at Winston for SY 2021-2022. Pl. SMF ¶¶168, 170. The IHO denied Plaintiffs' request for compensatory tutoring finding that (i) Winston "has the depth and breadth of individualized and specialized curriculum and services to adequately address the Student's unique needs[,]" (ii) E.G.'s program at Winston included a program that the IHO described as "SETSS,"[3] and (iii) E.G. had made "significant progress under her current program[.]" Dkt. No. 23-1 at 44.

Plaintiffs appealed the denial of compensatory education to the SRO and argued, in part, that the IHO denied them due process by failing to order DOE to comply with the document subpoena. Pl. SMF ¶¶ 173-174. On October 27, 2022, SRO Justyn P. Bates issued a decision ("SRO Decision") denying and dismissing the

---

[3] Plaintiffs contest this characterization and state that SETSS is a DOE service. Dkt. No. 28 at 36.

appeal.  Dkt. No. 23-1 at 7-30.  The SRO Decision noted that the IHO reasonably considered E.G.'s progress at Winston in denying compensatory education for the prior years.  Id. at 29-30.  Further, the SRO found that denial of compensatory education was proper considering E.G. made progress in the DOE program where she passed from grade to grade, and was "flourishing" at Winston.  Id. at 30.

Plaintiffs filed the instant Complaint on February 16, 2023 seeking review of the SRO Decision.  Compl. ¶ 2.  Plaintiffs also allege violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), 42 U.S.C. § 1983, and New York Education Law.  Id. ¶ 1.  On June 1, 2023, the Parties were heard in an initial case management conference before this Court.  See Dkt. No. 20.  This Court granted a request for the summary judgment motions to first address Plaintiffs' appeal of the SRO Decision, rather than the systemic claims.  See Transcript Dkt. No. 39 at 11.

On August 14, 2023, Plaintiffs moved for partial summary judgment on their appellate claims.  See Dkt. Nos. 27-31.  Plaintiffs also filed a request to seal documents included in the declaration supporting their motion arguing that the documents have been designated by Defendants as confidential and are subject to the protection of the Family Educational Rights and Privacy Act.  Dkt. No. 26 ("Seal Request").  On September 27, 2023, Defendants filed their opposition to Plaintiffs' motion for summary judgment and cross-moved for summary judgment on all claims in the complaint.  See Dkt. Nos. 36-38.  On October 27, 2023, Plaintiffs filed their opposition and reply.  See Dkt. Nos. 43-45.  On November 27, 2023, Defendants filed their reply, Dkt. No. 48, withdrew their arguments for summary judgment on

Plaintiffs' systemic claims, Dkt. No. 46 at 1-2, and requested leave to file a response statement to Pl. SMF, Dkt. No. 46 at 1.  On December 4, 2023, this Court granted Defendants' request to file a response to Pl. SMF and granted Plaintiffs' leave to file a sur-reply.  Dkt. No. 51.  On December 11, 2023, Plaintiffs filed their sur-reply.  Dkt. No. 53.  On January 30, 2024, this Court heard oral argument on the pending motions.  Dkt. No. 54.

## LEGAL FRAMEWORK AND STANDARD OF REVIEW

The IDEA is designed to ensure that "all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. § 1400(d)(1)(A).  With respect to providing a FAPE, "[t]o meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1, 580 U.S. 386, 399 (2017).

To challenge a student's IEP, a parent may file a due process complaint outlining alleged issues that the district failed to offer the child a FAPE.  See 20 U.S.C. § 1415(b)(6)(A). In New York, the due process complaint is first litigated at an administrative hearing before an IHO.  See 20 U.S.C. § 1415(f)(1)(A); N.Y. Educ. Law § 4404(1)(a).  An IHO's decision may be appealed to the SRO, See N.Y. Educ. Law § 4404(2), and aspects of the IHO's decision that are not appealed are final and binding.  See 34 C.F.R. § 300.514; see also Dkt. No. 23-1 at 18 (citing M.Z. v. New York City Dep't of Educ., 2013 WL 1314992, at *6-*7, *10 (S.D.N.Y. Mar. 21, 2013)). The party

aggrieved by the SRO's decision may then seek review in court.  20 U.S.C. § 1415(i)(2)(A).  "On appeal to a federal court. . . the burden of demonstrating that an SRO ruled incorrectly falls on the party challenging that decision."  R.G. v. New York City Dep't of Educ., 585 F. Supp. 3d 524, 535 (S.D.N.Y. 2022).

Although the Parties have sought relief from the Court through motions for summary judgment, "the procedure is in substance an appeal from an administrative determination, not a summary judgment motion.'" Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S., 990 F.3d 152, 165 (2d Cir. 2021) (quoting M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 226 (2d Cir. 2012)).  Therefore, the Court "engage[s] in an independent review of the administrative record and make[s] a determination based on a preponderance of the evidence." M.H., 685 F.3d at 240 (internal quotation marks omitted); see also 20 U.S.C. § 1415(i)(2)(C)(iii).

"The standard of review requires a more critical appraisal of the agency determination than clear-error review" but "falls well short of complete de novo review." C.F. v. New York City Department of Education, 746 F.3d 68, 77 (2d Cir. 2014) (internal quotation marks omitted).  In conducting this independent review, the Court must "give due weight" to the administrative proceedings "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." M.H., 685 F.3d at 240 (internal quotation marks omitted).  Further, the Court is not permitted to make "subjective credibility assessment[s]," and cannot "ch[oose] between the views of conflicting experts on ... controversial issue[s] of educational policy ... in direct

contradiction of the opinions of state administrative officers who had heard the same evidence."  Id. (quoting Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377 (2d Cir. 2003)).

"[T]he Second Circuit has instructed that deference to an SRO 'is particularly appropriate when ... the state hearing officers' review has been thorough and careful' and is 'reasoned and supported by the record.'"  FB v. New York City Dep't of Educ., 923 F. Supp. 2d 570, 581 (S.D.N.Y. 2013) (citing other sources).  However, the Court need not defer to an SRO decision that is "against the weight of the evidence[.]"  R.E. v. New York City Dep't of Educ., 694 F.3d 167, 194 (2d Cir. 2012).  Lastly, deference to the administrative decisions is not warranted on questions of law.  Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 82 (2d Cir. 2005).

## DISCUSSION

The SRO denied compensatory education to E.G. as a remedy for Defendants' failure to provide her a FAPE for SYs 2019-2020 and 2020-2021.  Dkt. No. 23-1 at 30. The sole issue presently before this Court is whether the SRO Decision erroneously denied this remedy to Plaintiffs.

"Compensatory education is prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education."  Somoza v. N.Y.C. Dep't of Educ., 538 F.3d 106, 109 n.2 (2d Cir.2008) (internal quotation marks omitted).  An award of compensatory education is expected to be "reasonably calculated to provide the educational benefits that likely would have accrued from special education services

the school district should have supplied in the first place." <u>Doe v. E. Lyme Bd. of Educ.</u>, 790 F.3d 440, 457 (2d Cir. 2015) (quoting <u>Reid ex rel. Reid v. D.C.</u>, 401 F.3d 516, 524 (D.C. Cir. 2005)).

Here, the Parties do not contest that compensatory education was a prospective remedy that E.G. could have been awarded for the denials of the FAPE.  Dkt. No. 28 at 21-24; Dkt. No. 13.   Instead, the Parties contest whether the denials of compensatory education were appropriate given the circumstances.

Plaintiffs argue that (i) the IHO and SRO Decisions were against the weight of the evidence and not entitled to deference, (ii) the denial of compensatory education effectively provided Plaintiffs with a "right without a remedy" for the FAPE denials in SYs 2019-2020 and 2020-2021, and (iii) equitable considerations favor an award of compensatory education.  <u>See</u> Dkt. No. 28 at 26-43.  Defendants counter that (i) the administrative decisions demonstrate that E.G. was ineligible for compensatory education for SYs 2019-2020 and 2020-2021 because she had made "meaningful progress that she would otherwise have made had she been provided FAPE" for those years, (ii) E.G. performed on grade level at Winston during SY 2021-2022, (iii) the administrative decisions were supported by the evidence and entitled to deference, and (iv) equitable considerations favor DOE.  <u>See</u> Dkt. No. 37 at 13-17, 22; Dkt. No. 48 at 2-8.  This Court will address each of these issues in turn.

**A.  The Weight of the Evidence Supports the Administrative Decisions.**

The SRO and IHO Decisions denied compensatory education for E.G. finding that she was making significant progress at Winston, such that she did not require

compensatory services.  Dkt. No 23-1 at 29-30; 43-44.  The SRO also noted that E.G. made "progress" within the DOE program and had been passed from grade to grade. Id. at 29-30.  Based on the record before this Court, deference to the SRO Decision is warranted.  It is thorough, well-reasoned, and supported by facts in the record. Having reviewed the SRO Decision in depth, the SRO has a lengthy analysis of E.G.'s history and claims for compensatory education.  Dkt. No. 23-1 at 18-30.  The SRO relied on testimony, E.G.'s report cards and permanent record, and the evaluations of E.G. to find that she was making progress and performing at grade level at Winston such that no compensatory education was warranted.  Id.  While this Court lacks the "specialized knowledge" to parse through E.G.'s grades, the SRO devoted pages of his analysis to analyzing E.G.'s scores in context.  Id.  Therefore, this Court is satisfied that the SRO properly denied E.G. compensatory education based on the record.

### i. Plaintiffs' Objections to the SRO Decision

With respect to the SRO Decision, Plaintiffs first argue that the SRO committed a legal error by concluding that E.G. was "making progress" under the DOE programs, when the IHO found that E.G. was not making "appropriate progress." Dkt. No. 28 at 39-40.  Plaintiffs state that because the FAPE findings were not cross appealed by DOE, they were final and binding, such that the SRO was bound by those findings.  Id. at 39 (citing M.Z. v. New York City Dep't of Educ., No. 12 CIV. 4111 (KBF), 2013 WL 1314992, at *6 (S.D.N.Y. Mar. 21, 2013)).  Defendants counter that the IHO Decision focused on E.G.'s progress at Winston, and the SRO

Decision echoed those findings adding that E.G. had also progressed in SY 2020-2021 at the DOE school.  Dkt. No. 48 at 5.

In this Court's view, both the SRO Decision and IHO Decision clearly point to E.G.'s progress at Winston as a primary reason for denying compensatory education. Dkt. No. 23-1 at 30, 44.  The SRO Decision further examined E.G.'s education at DOE to determine whether an award of compensatory education was appropriate.  Id. at 26.  The SRO noted that E.G. had an 80.50 average and earned 21 credits toward graduation after finishing her ninth grade year in 2020-2021.  Id.  Additionally, the SRO noted E.G.'s "As" and "Bs" at Winston.  Id. at 29.  These facts were in the record before the SRO, and he simply relied on them in assessing whether denying compensatory education was an error based on the record.  While the SRO Decision does say that E.G. made "progress" at DOE, it does not disturb the findings of the IHO in a way that would warrant reversal.  Instead, the SRO Decision shows that, in the aggregate, based on E.G.'s educational progress and performance at Winston, the SRO found that no compensatory education was owed to her.

Plaintiffs also allege that the SRO Decision failed to (i) interpret how West End's "reengagement system" effected E.G.'s grades while relying on her 2020-2021 grades to show her progress and (ii) did not acknowledge the waiver of E.G.'s Regents exams and how they affected her education.  Dkt. No. 28 at 40.  With respect to the "reengagement" policy, the SRO did acknowledge it and consider it in evaluating E.G.'s grades.  Dkt. No. 23-1 at 23 n. 19 ("The school psychologist. . . explained that . . . students were able to submit an assignment, have a teacher review it and provide

feedback, and then resubmit the assignment applying the teacher's feedback"). Regarding the Regents, the SRO clearly acknowledged that there were "some gaps" regarding E.G.'s performance in SYs 2019-2020 and 2020-2021. Id. at 29.  While Plaintiffs may not agree with the SRO's analysis of the issues, that does not warrant reversal of his decision.

Plaintiffs next argue that the SRO inappropriately rejected the testimonies of Dr. Pass and Dr. Levy, improperly relied on the testimony of Ms. Melbourne, and improperly applied the testimony of the Winston academic dean to deny E.G. compensatory education.  Dkt. No. 28 at 40-43.  As previously noted, this Court is not permitted to make "subjective credibility assessment[s]," and cannot "ch[oose] between the views of conflicting experts on ... controversial issue[s] of educational policy ... in direct contradiction of the opinions of state administrative officers who had heard the same evidence."  M.H., 685 F.3d at 240 (quoting Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 383 (2d Cir. 2003)).  Here, Plaintiffs made many of the same arguments (e.g., regarding Dr. Levy and Dr. Pass recommending compensatory education) to the SRO, and the SRO simply rejected them.  Dkt. No. 48 at 5-6. Additionally, Plaintiffs acknowledged on the record that the Dr. Pass evaluations, from 2015 and 2020-2021, occurred before E.G. went to Winston.  See Transcript at 25.  The SRO Decision noted that the Pass 2021 Evaluation took place after the start of the COVID-19 pandemic, so the demonstrated regression was not surprising.  Dkt. No. 23-1 at 28-29.    In this Court's view, the Dr. Pass evaluations do not address

16

E.G.'s performance at Winston and are not squarely on point regarding whether the gap had been bridged.

The only new argument that Plaintiffs raise is regarding the credibility of DOE school psychologist Ms. Melbourne based on emails obtained during discovery in this action. With respect to Ms. Melbourne's testimony, Plaintiffs cite that Melbourne testified that she did not have any written communications about Plaintiffs and E.G. beyond communications with the DOE attorney.  Dkt. No. 28 at 33. Plaintiffs argue that through discovery they received communications Melbourne had with D.C.G. and West End staff regarding the IEP meetings and the Levy 2021 Assessment, so her credibility is in question. Id. at 33-34.  The SRO Decision notes that "[Melbourne] testified that the district had requested the email and that in responding to the subpoena, she did not know what to turn over[.]" Dkt. No. 23-1 at 19.  This shows that, at least in part, the SRO had considered Plaintiffs' arguments that Melbourne's testimony should be discredited.   Having reviewed the emails that Plaintiffs submitted following discovery, there are no emails to suggest that Melbourne acted dubiously or withheld emails for an improper purpose.

Finally, even assuming *arguendo* that the SRO did err in addressing E.G.'s progress at DOE in 2020-2021, the SRO Decision clearly relies more heavily on the progress that E.G. made at Winston in SY 2021-2022.  The question at issue is whether gaps caused by the FAPE denials had been bridged by the time the record was before the IHO.  See Transcript at 19.  Considering the facts about E.G.'s performance at Winston in the record, this Court believes that the denial of

compensatory education is supported by the record.  The Winston dean testified that E.G. was "appropriately grouped with [her] peers" at Winston.  <u>See</u> Transcript at 29. The Winston dean also testified that there was a "very real probability that [E.G. could] graduate on grade level[.]" Dkt. No. 23-1 at 29-30.  While the testimony was speculative, the SRO relied on the language to conclude that E.G. had made significant progress at Winston such that any prior gaps caused by the FAPE denials had been bridged.  <u>Id.</u>  This Court agrees that the testimony of the Winston dean, coupled with E.G.'s Winston grades of As and Bs, shows that she was performing on grade level by the time the case was before the IHO.

Considering the above, the SRO Decision is both entitled to deference and supported by the weight of the evidence.

**ii. Plaintiffs' Objections to the IHO Decision**

With respect to the IHO decision, Plaintiffs argue that it should not be entitled to deference because it was "legally and factually erroneous, inadequately reasoned, and against the clear weight of the evidence."  Dkt. No. 28 at 34.  This Court notes that the IHO's analysis on the issue of compensatory education was very short. Dkt. No. 23-1 at 43-44.  However, considering the record in its entirety, this Court is not persuaded by Plaintiffs' arguments that the decision was erroneous.

 Plaintiffs allege that the IHO's Decision was against the clear weight of the evidence, citing the testimonies.  Dkt. No. 28 at 37-39.  As discussed <u>supra</u> Part(A)(i), this Court declines to re-weigh the witness testimony and finds that the IHO's

position was adequately supported by the record, including E.G.'s grades at Winston and the testimony of the Winston dean.

## B. Plaintiffs Were Not Denied A Required or Appropriate Remedy.

Plaintiffs argue that E.G. "was left with no remedy for the FAPE denials for [SYs 2019-2020 and 2020-2021], when she attended a DOE school, was educated under inappropriate IEPs, and did not make appropriate progress." Dkt. No. 28 at 26. Plaintiffs cite that "[a] right without a remedy is unknown to law[,]" so the denial of a remedy is contrary to law. Id. (citing Barrett v. Holmes, 102 U.S. 651 (1880)). Defendants counter that the denial of a FAPE is insufficient to necessitate compensatory education. Dkt. No. 37 at 14. "It is well-settled that the finding of a FAPE violation does not, without more, trigger an entitlement to compensatory education." Id. (citing Killoran on behalf of A.K. v. Westhampton Beach Sch. Dist., No. 20-CV-4763(JS)(SIL), 2022 WL 954851, at *7 (E.D.N.Y. Mar. 30, 2022)).

In Killoran, cited by Defendants, the court noted "awarding compensatory education here when there is no discernible lost progress is unwarranted and would be akin to awarding damages which is not appropriate under the IDEA." Killoran, 2022 WL 954851, at *9 (cleaned up). Plaintiffs argue that Killoran is inapposite because in that action the "FAPE violation was not based on any substantive evidence related to the sufficiency of [the student's IEP]." Id. at *7. Plaintiffs are correct that the instant action is factually distinct because the IHO in this case found that "DOE failed to properly evaluate [E.G.] and make the necessary adjustments to the IEP. . . that would allow [E.G.] to make appropriate educational progress based on her

specific educational needs." Dkt. No. 23-1 at 43.  However, the case law is clear that the IDEA is not designed to provide a damages remedy, but rather to "make up" for gaps in the student's education.  <u>Killoran</u>, 2022 WL 954851, at *9.  The IHO and SRO simply did not find that compensatory education was necessary to remedy E.G.'s harm based on the record.  The IHO specifically relied on the testimony of Winston's academic dean and noted the progress E.G. had made under her current program.  Dkt. No. 23-1 at 44.  The SRO Decision included a quote from the dean wherein he testified that based on E.G.'s progress he thought there was a "very real probability" that E.G. could graduate on grade level.  <u>Id.</u> at 29-30.  Further, the SRO decision noted that E.G. received As and Bs at Winston by January 2022.  <u>Id.</u> It is clear that the IHO and SRO did not award compensatory education because they did not find a gap in E.G.'s education requiring further remedy.  In this Court's view, that finding does not amount to an error of law warranting reversal.

Defendants also rely on <u>Phillips ex rel. T.P. v. D.C.</u>, 932 F. Supp. 2d 42 (D.D.C. 2013), which was cited in the SRO Decision, where a court held that the evidence was sufficient to support the hearing officer's finding that an award of compensatory education was not warranted.  Dkt. No. 37 at 14; Dkt. No. 23-1 at 29.  Plaintiffs argue that <u>Phillips</u> is distinguishable because in that action the parent's chosen expert did not support a compensatory education award, whereas in the instant action, Dr. Pass and Dr. Levy both supported compensatory education.  Dkt. No. 43 at 20-21.  At oral argument, Plaintiffs reiterated the argument that Dr. Pass and Dr. Levy both testified in favor of compensatory education.  <u>See</u> Transcript at Dkt. No. 17-18.

Plaintiffs' argument is unavailing and insufficient to justify the reversal of the SRO Decision.  It cannot be the case that so long as a plaintiff is able to find an expert to support their position regarding compensatory education, the SRO is bound by that decision.  Further, as in Phillips, in this action the SRO relied on the testimony of one of Plaintiffs' witnesses (the Winston dean) in denying compensatory education. Dkt. No. 23-1 at 29.  The SRO in this action also relied on the Defendants' rebuttal witness, the DOE school psychologist.  Id. at 23.  Finally, the logic of Phillips is plainly applicable to the instant action.  SRO Bates cited to Phillips for the proposition that compensatory education may not be required, even where there is a denial of FAPE, because the student has "flourished in their current placement" and compensatory education "would not help."  Id.  This is plainly language from the case (quoting another source), and it cannot be said that the SRO made a legal error in relying on the case to support his decision.

By contrast, Plaintiffs cite to Streck v. Bd. of Educ., 408 F. App'x 411, 415 (2d Cir. 2010) for the proposition that the denial of compensatory education leaves E.G. without a remedy.  Dkt. No. 28 at 21 (quoting Streck).  As Defendants note, Streck is distinguishable because it concerned the failure of a school district to set aside funds for compensatory services that had already been awarded by an SRO.  See Streck, 408 F. App'x at 415.  The SRO in Streck had already determined that the student had a right to the remedy of compensatory education; therefore, compensatory education could not be denied based on a lack of available funds.  Conversely, here, the IHO and SRO both determined that no compensatory education was owed to E.G.  Dkt. No. 23-

1 at 30, 43-44.  Plaintiffs argue that <u>Streck</u> speaks to the "injustice" of this case because compensatory education cannot turn on "parents' ability to finance its costs" and the Plaintiffs could not "undertake the significant financial risk" of placing E.G. at Winston until the third year of the FAPE denial.  Dkt. No. 43 at 24.  Even crediting this argument from Plaintiffs, the award of compensatory education is a discretionary equitable remedy.  Plaintiffs essentially attack IDEA policy which puts a parent in an unenviable position of making a gamble to switch their child to a private school, and later seek reimbursement from DOE.   While an argument attacking the system may be well founded, it is an argument that must be directed toward the legislature and not the Court.  It cannot be said that the SRO committed a legal error by denying compensatory education where he found that E.G. was "flourishing" at Winston with all As and Bs in a class of 10th and 11th graders.  Dkt. No. 23-1 at 29-30.

On balance, the SRO decision relies on correct legal standards, and this Court is not persuaded that Plaintiffs have demonstrated an error of law warranting reversal of the SRO Decision.

Finally on February 9, 2024, the Parties wrote to raise their arguments with respect to a recent Court ruling in <u>Bird v. Banks</u>, No. 22-CV-8049 (JGK), 2023 WL 8258026 (S.D.N.Y. Nov. 29, 2023).  Dkt. No. 55.  In <u>Bird</u>, 2023 WL 8258026, at *6, the District Court upheld a ruling by an SRO denying compensatory education finding that there was "no evidence in the record to suggest that [student] H.C. lost progress due to the denial of a FAPE, so as to warrant compensatory educational services." While Plaintiffs argues that Bird is distinguishable, Dkt. No. 55, this Court disagrees.

Similarly to <u>Bird</u>, in the instant action Plaintiffs have failed to satisfy their burden of demonstrating that the SRO decision was "insufficiently reasoned or supported." <u>Bird</u>, 2023 WL 8258026, at *5; <u>see</u> <u>supra</u> Part (A)(i). The finding in <u>Bird</u> provides further support that the SRO Decision should stand.

Therefore, for the foregoing reasons, this Court is satisfied that the SRO properly denied compensatory education as a remedy.

### C. Seal Request at Dkt. No. 26

The Parties request to seal an exhibit which contains emails Defendants produced pursuant to a discovery order in this action. Dkt. No. 26. Plaintiffs use the emails to argue that the testimony of DOE school psychologist Melbourne should be discredited. Dkt. No. 28 at 33. Plaintiffs state that this Court should approve the sealing request because (i) in a prior order, this Court authorized filing the administrative record under seal, Dkt. Nos. 22-23, (ii) the documents were sought through administrative proceedings, like previously sealed documents, and contain identifying information of minor child E.G. and her parent Plaintiff D.C.G., and (iii) Defendants have marked the documents as confidential and subject to the Family Educational Rights and Privacy Act. Dkt. No. 31 ¶ 12. On balance, this Court is not persuaded that sealing the document in its entirety is proper.

It is well established that there is a presumption of public access to judicial documents and the Court must find that the presumption has been overcome before sealing or redacting a document. <u>Lugosch v. Pyramid Co. of Onondaga</u>, 435 F.3d 110, 119-20 (2d Cir. 2006). The Second Circuit has articulated a three-step test for

determining whether the presumption of public access is overcome.  Id.  First, the Court determines whether the documents are "judicial documents" that are "useful in the judicial process."  Id.  Next, if the documents are judicial documents, the Court determines the weight of the presumption of public access.  Id. at 119.  Finally, the Court must "balance competing considerations against [the presumption of access]," including "privacy interests of those resisting disclosure."  Id. at 119-20.  The assessment of whether the presumption in favor of public access is overcome must be made on a document-by-document basis. See, e.g., Brown v. Maxwell, 929 F.3d 41, 48 (2d Cir. 2019).

At step one, the documents are being offered by Plaintiffs in support of their arguments and are judicial documents "relevant to the performance of the judicial function and useful in the judicial process," Lugosch, at 115 (citing United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995)).  At step two, judicial documents are entitled to the "highest" weight of the presumption of public access in motions that are potentially dispositive, like motions for summary judgment.  See In re New York City Policing During Summer 2020 Demonstrations, 635 F. Supp. 3d 247, 253 (S.D.N.Y. 2022).  This Court has reviewed and opined on the emails in the exhibit, supra Part (A)(i), and therefore, they are entitled to a high presumption of public access.  At step three, while the Parties indicate privacy concerns related to E.G. and D.C.G., the emails can be easily redacted to omit sensitive information.  Further, the purpose of the Family Educational Rights and Privacy Act is to protect the privacy of student educational records.  20 U.S.C. § 1232(g); 34 CFR Part 99.  From this Court's review,

the emails do not contain information about E.G.'s educational records that have not already been opined on in this order (such as her IEP status).  Therefore, the request to seal the exhibit 1 in Dkt. No. 31 in its entirety is DENIED.

**The Clerk of the Court is respectfully directed to close the motion at Dkt. No. 26, maintaining the current sealing settings.**  To effectuate this Order, the Parties are directed to meet and confer on necessary redactions in light of this Court's ruling and provide a redacted copy for the public to view by February 29, 2024.

## RECOMMENDATION

For the foregoing reasons, this Court recommends that Plaintiffs' motion for partial summary judgment be DENIED and Defendants' motion for partial summary judgment be GRANTED.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections shall be filed with the Clerk of Court and on ECF.  Any requests for an extension of time for filing objections must be directed to Judge Cronan.  **Failure to file objections within fourteen days will result in a waiver of objections and will preclude appellate review**.  See Thomas v. Arn, 474 U.S. 140 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

SO ORDERED.

DATED:        New York, New York
              February 15, 2024

_____
JENNIFER E. WILLIS
United States Magistrate Judge