UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
D.C.G. and D.G., *individually and as next friend for their*       :
*child E.G.*,                                                       :
                                                                   :
                                    Plaintiffs,                    :
                                                                   :
                    -v-                                            :        23 Civ. 1337 (JPC) (JW)
                                                                   :
NEW YORK CITY DEPARTMENT OF EDUCATION,                             :        OPINION AND ORDER
*et al.*,                                                          :
                                                                   :
                                    Defendants.                    :
                                                                   :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

 Plaintiffs D.C.G. and D.G. are the parents of E.G., a seventeen-year-old girl with a learning

disability.  They bring this action against the New York City Department of Education ("DOE"),

the New York City Board of Education, Chancellor David Banks in his official capacity, and the

City of New York, under, *inter alia*, the Individuals with Disabilities Education Act, 20 U.S.C.

§§ 1400 *et seq.* ("IDEA"), seeking, among other remedies, reversal of the decision of a New York

State Review Officer ("SRO") denying compensatory educational services for E.G. to remedy

denials of a free and appropriate public education ("FAPE") for her for the 2019-2020 and 2020-

2021 school years.

 The parties have cross-moved for partial summary judgment as to Count One of the

Complaint.  On February 15, 2024, the Honorable Jennifer E. Willis issued a Report and

Recommendation, in which she recommended that Plaintiffs' motion be denied and Defendants'

motion be granted.  Dkt. 58 ("R&R").  Plaintiffs have filed objections to the Report and

Recommendation, arguing principally that Judge Willis erred in deferring to the SRO decision, in

finding that decision to be consistent with the weight of the evidence, and in concluding that E.G. reached grade level functioning and that gaps resulting from the prior FAPE denials had been bridged during E.G.'s attendance at a private school for the 2021-2022 school year.   After reviewing those objections, and for the reasons discussed below, the Court adopts Judge Willis's recommendation as to the disposition of this case.   Defendants' motion for partial summary judgment is therefore granted and Plaintiffs' motion is denied.

## I.   Background

### A.   Overview of the IDEA

Congress enacted the IDEA with the purpose of "ensur[ing] that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."   20 U.S.C. § 1400(d)(1)(A).   To achieve this end, the IDEA requires state or local education agencies to provide each student with a disability an individualized education program ("IEP") specifying the student's educational needs.   *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 448 (2d Cir. 2015) (quoting *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985)).

"Congress repeatedly emphasized throughout the Act the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness."   *Honig v. Doe*, 484 U.S. 305, 311 (1988) (citing 20 U.S.C. §§ 1400(c), 1401(19), 1412(7), 1415(b)(1)(A), (C), (D), (E), 1415(b)(2)).   States must thus allow parents "to seek review of any decisions they think inappropriate."   *Id.* at 312; *see* 20 U.S.C. § 1415(a) (requiring state education agencies to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with

respect to the provision of a [FAPE]").  In New York, parents may challenge the adequacy of their

child's IEP in a due process hearing before an impartial hearing officer ("IHO").  N.Y. Educ. Law

§ 4404(1).  If dissatisfied with the IHO's decision, either party may appeal that decision to an SRO,

whose decision is final and concludes the state administrative review; if still dissatisfied at that

juncture, either party may then bring a civil action in federal or state court.  *Id.* § 4404(2);

20 U.S.C. § 1415(a)(i)(2)(A).  "On appeal to a federal court . . . the burden of demonstrating that

an SRO ruled incorrectly falls on the party challenging that decision."  *R.G. v. N.Y.C. Dep't of

Educ.*, 585 F. Supp. 3d 524, 535 (S.D.N.Y. 2022).

**B.     Facts and Procedural History[1]**

The Court assumes the parties' familiarity with the underlying facts and procedural history

of this case, which are detailed in the Report and Recommendation, *see* R&R at 2-10, and provides

only a brief summary here.

D.C.G. and D.G. are the mother and father, respectively, of E.G., a seventeen-year-old high

school student who has been classified by the DOE as having a learning disability.  Pls. 56.1 Stmt.

¶¶ 1-3, 5-6; Dkt. 23-1 at 32-33, 35.  E.G. attended eighth grade at West End Secondary School

("West End"), a DOE public school, for the 2019-2020 school year, and ninth grade at West End

for the 2020-2021 school year.  Pls. 56.1 Stmt. ¶¶ 8-9, 11.  On September 9, 2019, which was at

the beginning of E.G.'s eighth grade year, D.C.G. informed the staff at West End that E.G.

expressed "anxiety about returning to school" and that she was showing "low self[-]esteem about

---

[1] The following background facts, which are not in dispute, are drawn primarily from the
underlying administrative record, which was filed under seal on July 26, 2023, Dkt. 23, and
Plaintiffs' statement of undisputed material facts pursuant to Local Civil Rule 56.1(a), Dkt. 29
("Pls. 56.1 Stmt."), to extent factual assertions contained therein are not disputed in Defendants'
counter-statement pursuant to Rule 56.1(b), Dkt. 47.  Citations to the administrative record are to
the page numbers corresponding to the Electronic Case Filing (ECF) pagination.

her academic abilities," describing herself as "stupid."  Pls. 56.1 Stmt. ¶ 55; Dkt. 23-4 at 89.  E.G.'s IEP at the time recommended her continued placement in an Integrated Co-Teaching ("ICT") class, but did not recommend one-on-one academic services or tutoring.  Pls. 56.1 Stmt. ¶¶ 56-57.  Then, in March 2020, E.G.'s school closed for in-person instruction due to the COVID-19 pandemic.  *Id.* ¶ 58.  A progress report from June 26, 2020, listed E.G.'s grades as 1.7 in Algebra, 2.4 in English Language Arts, 1.3 in Living Environment, and 1.5 in U.S. History.  *Id.* ¶ 60.  Under the DOE's 1-4 grading scale, a grade of "1" is well below standards, a grade of "2" is below standards, a grade of "3" is proficient, and a grade of "4" is excellent.  *Id.* ¶ 41.  E.G.'s permanent record as submitted to the Court does not reflect final grades for all these courses, but shows that E.G. received credit for Algebra, English 9, Living Environment, and U.S. History.  Dkt. 23-1 at 24 (citing Dkt. 23-2 at 549).  Three New York State Regents exams that E.G. would have taken during the year were waived due to the pandemic. Pls. 56.1 Stmt. ¶ 63.

In E.G.'s ninth grade year, which was the 2020-2021 school year, she received a combination of hybrid and remote learning.  *Id.* ¶ 65.  In January 2021, Dr. Lisa Pass, a licensed psychologist and certified school psychologist, conducted a psychoeducational evaluation of E.G. (the "Pass 2021 Evaluation").  *Id.* ¶ 66; Dkt. 23-2 at 486-497 (evaluation).  Dr. Pass measured E.G.'s IQ at 107, "which falls at the high end of the Average Range."  Dkt. 23-2 at 488.  But Dr. Pass also assessed E.G. to have a variety of learning disorders.  Pls. 56.1 Stmt. ¶ 74.  On March 1, 2021, E.G. was further assessed by Emily Levy, Ph.D., the Founder and Director of EBL Coaching, a provider of tutoring services to students with disabilities (the "Levy 2021 Assessment").  *Id.* ¶ 80; Dkt. 23-2 at 485 (letter from Levy regarding her assessment).  The Levy 2021 Assessment "strongly recommend[ed] that [E.G.] receive 700 hours of one-on-one multi-sensory tutoring." Dkt. 23-2 at 485.

After these assessments, on March 23, 2021, the DOE held an IEP meeting for E.G.  Pls. 56.1 Stmt. ¶ 87.  At the meeting, Plaintiffs requested that E.G. be placed in a non-public school, but the DOE rejected the request and recommended E.G.'s continued placement in an ICT class at a public school.  Pls. 56.1 Stmt. ¶¶ 89-90.  The IEP created after the meeting characterized E.G.'s grades for English, AP Human Geography, and Earth Science as "below grade standards," and E.G.'s grades for Algebra II as "exceed[ing] grade standards."  *Id.* ¶ 96.  E.G.'s permanent record shows that she finished the 2020-2021 school year with a cumulative average of 80.50 percent and earned twenty-one credits towards graduation.  Dkt. 23-1 at 26.

Then, on August 25, 2021, Plaintiffs notified the DOE that they intended to place E.G. at a private school called Winston Preparatory School ("Winston"), as well as to seek payment for tuition at Winston and an award of compensatory education.  Pls. 56.1 Stmt. ¶¶ 103-104.  E.G. attended Winston for her tenth grade year, which was the 2021-2022 school year.  *Id.* ¶ 105.  At Winston, she was placed in a small class of students with similar learning profiles and additionally received instruction through a daily one-on-one focus class.  *Id.* ¶ 106.  E.G.'s fall progress report at Winston, dated January 12, 2022, included grades ranging from a "B-" to an "A," and her teachers provided detailed descriptions of her performance in various classes.  Dkt. 23-4 at 42-52.

On September 1, 2021, Plaintiffs filed a due process complaint, alleging that the DOE denied E.G. a FAPE for the 2019-2020 school year, the 2020-2021 school year, and the 2021-2022 school year.  Pls. 56.1 Stmt. ¶ 107.  Plaintiffs sought "tuition funding for their unilateral placement of [E.G.] at [Winston] for the 2021-22 school year as well as Compensatory Education in the form of private tutoring services for the 2019-20 and 2020-21 school years."  Dkt. 23-1 at 34.  As to compensatory education, Plaintiffs sought 700 hours of "compensatory tutoring."  *Id.* at 63 (appeal of IHO decision).

IHO Keila Tennent was assigned to the case in December 2021 and held hearings on five dates between February 18, 2022 and June 23, 2022.  Pls. 56.1 Stmt. ¶ 110; *see* Dkt. 23-1 at 32. At these hearings, the DOE conceded that it had denied E.G. a FAPE for the school years 2019-2020, 2020-2021, and 2021-2022.  Pls. 56.1 Stmt. ¶ 113; Dkt. 23-1 at 34-35.  On July 24, 2022, IHO Tennent issued her Findings of Fact and Decision (the "IHO Decision").  Dkt. 23-1 at 32-45. After noting that the DOE had conceded denials of a FAPE for all three school years, *id.* at 34, the IHO found that Winston was an appropriate placement for E.G. and awarded Plaintiffs payment for E.G.'s tuition at Winston for the 2021-2022 school year.  Pls. 56.1 Stmt. ¶¶ 168, 170.  But IHO Tennent denied Plaintiffs' request for compensatory tutoring for E.G., finding that (1) Winston "ha[d] the depth and breadth of individualized and specialized curriculum and services to adequately address the Student's unique needs" and (2) E.G. had made "significant progress under her current program," which, the IHO noted, included Special Education Teacher Support Services.  Dkt. 23-1 at 44.

Plaintiffs appealed the IHO's denial of compensatory education, and on October 27, 2022, SRO Justyn Bates issued a decision denying Plaintiffs' request for additional relief and dismissing the appeal.  Dkt. 23-1 at 7-30.  After reviewing the facts and procedural history of this matter up to that point, *id.* at 7-17, SRO Bates addressed a then-pending objection from Plaintiffs regarding the adequacy of the record before the IHO and determined that "the parents had the opportunity to present a case at the impartial hearing and that the impartial hearing was conducted in a manner consistent with the requirements of due process by the IHO."  *Id.* 18-20.  He then turned to the question of compensatory education, assessing, in ten-pages of single-spaced analysis, whether the IHO had properly denied Plaintiffs' request for compensatory education.  *Id.* at 20-30.  This lengthy analysis, which entailed a nuanced and comprehensive review of E.G.'s educational

history and progress, led to the conclusion that "the IHO was reasonable in finding that [Winston] was addressing [E.G.]'s needs, that the student had made significant progress at [Winston], and that although [the IHO] understood the parents' fears, the parents' request for compensatory education was not supported by the evidence." *Id.* at 30. SRO Bates thus found that "the hearing record" did "not require reversal of the IHO's determination to deny compensatory education services in this instance." *Id.*

Plaintiffs filed the instant Complaint on February 16, 2023, seeking review of the SRO's decision. Dkt. 1 ("Complaint") ¶ 2.[2] Plaintiffs bring five causes of action: (1) individual claims under the IDEA, *id.* ¶¶ 206-216, (2) systemic claims under IDEA, *id.* ¶¶ 217-224, (3) a claim under section 504 of the Rehabilitation Act, *id.* ¶¶ 225-229, (4) a claim under 42 U.S.C. § 1983, *id.* ¶¶ 230-236, and (5) a claim under state law alleging violation of their procedural due process rights, *id.* ¶¶ 237-248. At an initial case conference held on June 1, 2023, Judge Willis approved the parties' proposal to file partial summary judgment motions concerning only Plaintiffs' first cause of action, the individual IDEA claims. *See* Dkt. 39 at 11:5-23. Plaintiffs filed their motion for partial summary judgment on August 14, 2023, Dkts. 27-30, Defendants filed their motion for summary judgment and opposition to Plaintiffs' motion on September 27, 2023, Dkts. 36-38, Plaintiffs filed their reply in support of their motion and opposition to Defendants' motion on October 27, 2023, Dkts. 43-45, and Defendants filed their reply in support of their motion on November 27, 2023, Dkts. 47-48.

The Report and Recommendation was issued on February 15, 2024. Dkt. 58. Judge Willis recommended that Plaintiffs' motion for partial summary judgment be denied and Defendants'

---

[2] Further details on the procedural history of this action from the filing of the Complaint to the issuance of the Report and Recommendation are set forth in the Report and Recommendation. *See* R&R at 7-10.

motion for partial summary judgment be granted.  Judge Willis found that both the IHO's decision and the SRO's decision were well reasoned and adequately supported by the evidence.  R&R at 14-18 (SRO's decision); *accord id.* at 18-19 (IHO's decision).  In light of this finding, Judge Willis further concluded that the SRO's decision was entitled to deference.  *Id.* at 18.  Judge Willis then explained that, in light of her assessment of the underlying administrative decisions and her own review of the available evidence, E.G. was not denied a required or appropriate remedy when the IHO and SRO refused to grant E.G. compensatory education in the form of 700 hours of one-on-one tutoring.  *Id.* at 23.  Finally, Judge Willis denied the parties' joint request to seal certain emails regarding Kerry-Kay Melbourne, a DOE school psychologist who testified before the IHO.  *Id.* at 23-25.

The deadline for the parties to file objections to the Report and Recommendation was February 29, 2024.  R&R at 25.  The Court granted Plaintiffs an extension on that deadline, permitting them to file objections by March 5, 2024, Dkt. 60, and Plaintiffs filed their objections on that date, Dkt. 63 ("Objections").  Defendants opposed those objections on March 19, 2024. Dkt. 64 ("Responses").

## II.  Legal Standard

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a report and recommendation.  28 U.S.C. § 636(b)(1)(C).  If a party makes a proper and timely objection to a finding in a report and recommendation, the Court reviews that finding *de novo*.  Fed. R. Civ. P. 72(b)(3); *see United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  To be proper, an objection must be "clearly aimed at particular findings," *Hernandez v. City of New York*, No. 11 Civ. 6644 (KPF) (DF), 2015 WL 321830, at *2 (S.D.N.Y. Jan. 23, 2015) (internal quotation marks omitted), and may not be

"conclusory or general," *id.* (quoting *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009)).  Parties may neither "regurgitate the original briefs to the magistrate judge" nor introduce new arguments that could have been raised before the magistrate judge in the first instance but were not.  *Id.*; *accord United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019).  If a party makes objections that are merely conclusory, or that rehash arguments made before the magistrate judge, the Court reviews only for clear error.  *See Thomas*, 674 F. Supp. 2d at 511.  Similarly, if no objections are made, the Court reviews a report and recommendation for clear error.  *See, e.g.*, *Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

### III.  Discussion

In IDEA cases, the usual summary judgment standards do not apply.  *See, e.g.*, *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam); *Viola v. Arlington Cent. Sch. Dist.*, 414 F. Supp. 2d 366, 377-78 (S.D.N.Y. 2006).  Instead, summary judgment in IDEA cases is "in substance an appeal from an administrative determination, not a summary judgment."  *See Arlington Cent. Sch. Dist. v. D.K. & C.K.*, No. 02 Civ. 2117 (DLC), 2002 WL 31521158, at *7 (S.D.N.Y. Nov. 14, 2002) (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)); *accord Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005).  When reviewing IDEA administrative decisions, a federal district court considers the record and any additional evidence the parties submit and bases its determination on a preponderance of the evidence.  20 U.S.C. § 1415(i)(2)(C); *T.P.*, 554 F.3d at 252.  Because the IDEA authorizes "such relief as the court determines is appropriate," 20 U.S.C. § 1415(i)(2)(C)(iii), district courts exercise "equitable authority" when crafting appropriate relief.  *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 12 (1993).

Courts do not, however, have free reign in such actions. "The role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed," and "courts must bear in mind the statutory context and the administrative judges' greater institutional competence in matters of educational policy." *R.E. ex rel. J.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012) (internal quotation marks and brackets omitted). The court "must give due weight to [the administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.H. ex rel. P.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012) (internal quotations marks omitted). As the Second Circuit has explained, judicial review of state agency proceedings under the IDEA falls between two well-known standards of review, "requir[ing] a more critical appraisal of the agency determination than clear-error review" but "fall[ing] well short of complete *de novo* review." *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (internal quotation marks omitted). "In deciding what weight is due . . . the analysis often will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive," such as the "quality and thoroughness of the reasoning, the type of determination under review, and whether the decision is based on the administrative body's familiarity with the evidence and the witnesses." *Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 218 (2d Cir. 2014) (internal quotation marks omitted).

In their Objections, Plaintiffs argue that Judge Willis erred in deferring to the SRO decision, in finding the SRO's decision to be consistent with the weight of the evidence, in concluding that E.G. had reached grade level functioning while at Winston, and in determining that gaps resulting from the prior FAPE denials had been bridged during E.G.'s attendance at

Winston.  Objections at 3-21.  Plaintiffs further appeal to equitable principles as well as seek a remand to Judge Willis for further proceedings.  *Id.* at 22-25.

## A.    Deference to the SRO's Decision and Assessment of the Evidence

Plaintiffs object to Judge Willis's conclusion that the SRO's decision that E.G. was not entitled to compensatory education was both entitled to deference and supported by the weight of the evidence.  Objections at 12-22.  Although aspects of Plaintiffs' arguments largely rehash ones made to Judge Willis, out of an abundance of caution the Court reviews Plaintiffs' objections *de novo*.

"[T]he Second Circuit has instructed that deference to an SRO 'is particularly appropriate when . . . the state hearing officers' review has been thorough and careful' and is 'reasoned and supported by the record.'" *FB v. N.Y.C. Dep't of Educ.*, 923 F. Supp. 2d 570, 581 (S.D.N.Y. 2013) (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998)).  "Additionally, a district court should defer to administrative decisions where the IHO and SRO decisions are in agreement."  *Bird v. Banks*, No. 22 Civ. 8049 (JGK), 2023 WL 8258026, at *4 (S.D.N.Y. Nov. 29, 2023) (citing *C.W. ex rel. W.W. v. City Sch. Dist. of the City of N.Y.*, 171 F. Supp. 3d 126, 131-32 (S.D.N.Y. 2016)).  But the Court need not defer to an SRO decision that is "against the weight of the evidence," *R.E. ex rel. J.E.*, 694 F.3d at 194, nor is deference to administrative decisions warranted on questions of law, *Lillbask ex rel. Mauclaire*, 397 F.3d at 82.  Given this standard, in assessing whether a decision is entitled to deference, the Court must consider whether the decision was against the weight of the evidence.  Thus, analysis of Plaintiffs' first objection, concerning the level of deference properly afforded the SRO's decision, necessarily incorporates analysis of their second objection, concerning the weight of the evidence.

The question before IHO Tennent and SRO Bates, before Judge Willis when she issued the Report and Recommendation, and now before this Court is whether E.G. is entitled to compensatory educational services as a remedy for being denied a FAPE for the 2019-2020 and 2020-2021 school years.  "[C]ompensatory education is an available option under the [IDEA] to make up for denial of a free and appropriate public education." *P. ex rel. Mr. & Mrs. P. v. Newington Bd. of Educ.*, 546 F.3d 111, 123 (2d Cir. 2008).  As Judge Willis explained, "[c]ompensatory education is prospective equitable relief, requiring a school district to fund education . . . as a remedy for any earlier deprivations in the child's education."  R&R at 12 (quoting *Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 109 n.2 (2d Cir. 2008)).  Accordingly, "[t]he ultimate award of compensatory education must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *East Lyme Bd. of Educ.*, 790 F.3d at 457 (quoting *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 524 (D.C. Cir. 2005)).  Having conducted *de novo* review, this Court agrees with the Report and Recommendation's conclusion that the SRO's decision was both entitled to deference and not contrary to the weight of the evidence.

### 1.    Deference to the SRO Decision

IHO Tennent and SRO Bates agreed that compensatory education of 700 hours of one-on-one tutoring was not necessary to remedy the denial of a FAPE to E.G. for the 2019-2020 and 2020-2021 school years.  Dkt. 23-1 at 30 (SRO decision), 43-44 (IHO decision); *see Bird*, 2023 WL 8258026, at *4 ("[A] district court should defer to administrative decisions where the IHO and SRO decisions are in agreement.").  As noted in the Report and Recommendation, SRO Bates performed an analysis that was "thorough, well-reasoned, and supported by facts in the record."  R&R at 14.  To arrive at his conclusion, SRO Bates engaged in over ten single-spaced pages of

detailed analysis, Dkt. 23-1 at 20-30, which entailed him examining a wide range of evidence including, *inter alia*, report cards, Dkt. 23-1 at 23-24, 26 (noting that E.G. "finished the 2020-21 school year with a cumulative average of 80.5 percent"), IEPs, *id.* at 23-24, 27-28, parental testimony, *id.* at 23-24, testimony from a school psychologist, *id.* at 22-23, 26, Dr. Pass's evaluation in January 2021, *id.* at 24, another evaluation from Dr. Pass in 2015, *id.* at 26, and Dr. Levy's evaluation in March 2021, *id.* at 27.  The SRO viewed this evidence through the correct lens, assessing whether compensatory education would "place the student in the position he or she would have been in had the district complied with its obligations under the IDEA."  *Id.* at 20 (citing *Newington Bd. of Educ.*, 546 F.3d at 123).  Indeed, the SRO explicitly recognized that "[a]nswering this question requires a fact specific inquiry addressing factors, such as what the student's areas of need were at the time of the denial of FAPE—including what services would have met those needs, what special education services the student received, how the student performed with the program provided by the district, and how the student should have been expected to have performed if provided with appropriate services."  *Id.* at 20.

Thus, unless the SRO's decision was against the weight of evidence, the thoroughness and carefulness of SRO Bates's decision, which was aligned with IHO Tennent's decision, entitle the SRO's decision to deference.  The Court therefore turns to the evidence supporting the SRO's decision.

### 2.      Weight of the Evidence

In challenging Judge Willis's conclusion that SRO Bates's decision was not against the weight of the evidence, Plaintiffs primarily argue that the Report and Recommendation afforded too little weight to the testimony, evaluations, and recommendations from by Drs. Pass and Levy. Objections at 14-15, 17-19.  But as Judge Willis noted, courts "cannot choose between the views

of conflicting experts on controversial issues of educational policy in direct contradiction of the opinions of state administrative officers who had heard the same evidence." R&R at 11-12 (cleaned up) (quoting *M.H. ex rel. P.H.*, 685 F.3d at 240). Here, based in part on Dr. Pass's January 2021 evaluation of E.G., Dr. Levy recommended in March 2021 "700 hours of one-on-one multi-sensory tutoring" for E.G. Dkt. 23-2 at 485. Both Dr. Pass's evaluation and Dr. Levy's recommendation thus occurred before E.G. started attending Winston, where she apparently has made progress. Plaintiffs note that Dr. Pass testified before the IHO that E.G. still required compensatory education even after attending Winston and that Dr. Levy likewise testified that E.G. required the recommended tutoring after reviewing E.G.'s January 12, 2022 progress report from Winston. Objections at 14-15 (citing Dkt. 23-2 at 263-64 (Pass testimony); Dkt. 23-5 at 19 (Pass June 2022 affidavit); Dkt. 23-2 at 136-137 (Levy testimony)). But by the time of the testimony, E.G. had for months been receiving "daily 1:1 instruction via [Winston's] Focus program." Dkt. 23-1 at 29. The SRO weighed the recommendations of Drs. Pass and Levy, but in doing so took into account that those recommendations did not meaningfully change despite shifting circumstances in E.G.'s educational progress. Courts should be reticent to "direct[ly] contradict[] . . . the opinions of state administrative officers who ha[ve] heard the same evidence." *M.H. ex rel. P.H.*, 685 F.3d at 240 (quotation omitted). Given the SRO's careful consideration of the evidence presented, the Court declines to find that the SRO's afforded too little weight to the testimony, evaluations, and recommendations from Drs. Pass and Levy.

Next, Plaintiffs argue that the Report and Recommendation incorrectly found that the SRO decision did "not disturb the findings of the IHO in a way that would warrant reversal." Objections at 16-17 (quoting R&R at 15). Specifically, they claim that the SRO improperly relied on evidence that he viewed as demonstrative of E.G.'s progress during the 2019-2020 and 2020-2021 school

years, because the IHO had found that E.G. was entitled to a FAPE for those years. *Id.* But there is nothing inconsistent about finding that E.G. made *some* educational progress, even if she did not make enough progress such that a reviewing administrative officer concluded she was nonetheless denied a FAPE.

Third, Plaintiffs assert that the Report and Recommendation erred in failing to disturb the SRO's reliance on the testimony from Melbourne, the DOE school psychologist.[3]  Plaintiffs' principal objection is that Melbourne's view that, at the time of the March 2021 IEP, E.G.'s grades were "approaching or on grade level" was belied by the weight of evidence, and therefore should not have received any consideration.  Objections at 18-20; *see* Dkt. 23-1 at 26.[4]  But regardless of whether that aspect of Melbourne's testimony should have received weight, the assessment of the *overall* weight of the evidence would not change.  Plaintiffs try to suggest that Melbourne's assessment that E.G.'s grades approached or reached grade level played a greater role in SRO Bates's analysis than his decision reflects it did.  Plaintiffs essentially isolate a single, brief phrase in the midst of the SRO's lengthy analysis of E.G.'s progress during the 2019-2020 and 2020-2021 school years, ignoring the SRO's detailed, subject-by-subject review of the March 2021 IEP and teacher reporting from that IEP.  *Id.* at 27-29.  This review considered the vast record on E.G.'s academic progress, only briefly mentioning Melbourne's comment regarding E.G.'s grades.  *See*

---

[3] Plaintiffs also argue that Melbourne's testimony should not be given any weight due to issues with the production of Melbourne's emails.  Objection at 20 n.13.  As this argument is raised only in a footnote, the Court need not consider it.  *See, e.g.*, *City of Philadelphia v. Bank of Am. Corp.*, 498 F. Supp. 3d 516, 537 (S.D.N.Y. 2020) (collecting cases).

[4] The SRO also referenced Melbourne's statement that it was "not surprising" that E.G. had regressed during the COVID-19 pandemic due to a lack of in-class instruction, Dkt. 23-1 at 28-29.  The Court addresses Plaintiffs' objections to this observation below in discussing Plaintiffs' argument that the Report and Recommendation should have faulted the SRO for relying on the pandemic "to find that the regression shown in Dr. Pass's evaluation did not warrant compensatory education."  Objections at 21.

*id.* at 26-28 (reviewing E.G.'s academic performance), 26 (mentioning Melbourne's statements regarding E.G.'s grades "approaching or on grade level" and E.G.'s academic performance).  As SRO Bates summarized, the "evidence of progress is shown by the student's passing grades in a challenging district program with grade level curriculum, including one AP class, the student's advancement to the next grade, as well as by reports of the student's performance by the student's teachers."  *Id.* at 29.  Nor was the SRO's analysis perfunctory, but instead involved a delicate and balanced handling of this evidence of progress; for example, in reviewing E.G.'s progress in math, SRO Bates noted that E.G. "demonstrated good number sense, recognized patterns, understood pertinent math vocabulary but experienced 'significant challenges with learning and applying new concepts,'[] and with accurately computing basic mathematical operations and solving multi-step word problems."  *Id.* at 27-28 (quoting "Parent Ex. H at p. 3," which is E.G.'s IEP from April 13, 2021, *see* Dkt. 23-1 at 47)).  In sum, Plaintiffs' focus on the SRO's brief mention of a relatively minor comment from Melbourne regarding E.G.'s grades hardly supports the conclusion that the SRO's decision on the whole was contrary to the weight of evidence.

Fourth, Plaintiffs fault the Report and Recommendation for not taking issue with the SRO's lack of explicit recognition that E.G.'s New York State Regents exams were waived due to the COVID-19 pandemic.  Objections at 20-21.  As an initial matter, it is unclear if the SRO did, in fact, fail to recognize and consider the lack of test scores.  As the Report and Recommendation stated, the SRO acknowledged that there were "some gaps" in the hearing record.  *See* R&R at 16 (citing Dkt. 23-2 at 29).  While not clear, this statement may have been a reference to the test scores that were not available during the pandemic.  But even assuming that the SRO did not consider the absence of test scores, Plaintiffs' objection here also fails because it myopically focuses on a relatively small consideration to argue that the SRO's decision was against the weight

of evidence.  The SRO received and digested significant evidence regarding E.G.'s academic progress in the three school years in question despite the absence of the Regents Exam scores.  He examined, among other things, DOE teacher reports, Dr. Pass's March 2021 independent evaluation, progress reports and report cards from Winston, and testimony from the Dean at Winston.  Dkt. 23-1 at 14-24.  Plaintiffs have not explained how, given that wealth of evidence of E.G.'s academic performance, a failure to consider the mere absence of certain other evidence renders the SRO's entire decision contrary to the weight of the evidence.

Fifth, Plaintiffs argue that the Report and Recommendation should have faulted the SRO's decision for relying on the COVID-19 pandemic "to find that the regression shown in Dr. Pass's evaluation did not warrant compensatory education."  Objections at 21.  But it does not appear that the SRO relied in any meaningful sense on the impact of the pandemic on E.G.  The SRO mentioned COVID-19 only in a brief explanation of why E.G. might have regressed from March 2020 to January 2021.  Dkt. 23-1 at 28-29.  This comment—which was hardly the finding that Plaintiffs suggest it was—is insufficient to indicate error in the SRO's weighing of the full composition of evidence.

Finally, Plaintiffs lodge two additional complaints that take issue with the Report and Recommendation's endorsement of the SRO's method for assessing E.G.'s grades.  First, Plaintiffs argue that the SRO erred in not disregarding E.G.'s DOE grades in favor of the evaluation scores provided by Dr. Pass's testing.  Objections at 21-22.  The SRO's determination of the relative weight to give state-sanctioned grades compared to private evaluation scores implicates the trustworthiness assigned to the state-sanctioned grading system and therefore also educational policy.  It is well established that "courts must bear in mind the statutory context and the administrative judges' greater institutional competence in matters of educational policy." *R.E. ex*

*rel. J.E.*, 694 F.3d at 189.   Second, and likewise, Plaintiffs argue that the Report and Recommendation erred in not finding fault with the SRO's consideration of a particular grading system—the "reengagement" system—employed at E.G.'s DOE school.  Objections at 19-20.  But this too implicates educational policy by asking the Court to opine on the credibility and usefulness of a particular grading system.  Therefore, these objections also fail to establish that the SRO's decision was contrary to the weight of evidence.

In sum, the Court agrees with the Report and Recommendation's conclusion that the weight of the evidence was not contrary to the SRO's findings.[5]

**B.    E.G.'s Academic Progress During the 2021-2022 School Year**

Plaintiffs additionally object to the Report and Recommendation on the grounds that Judge Willis incorrectly found that "the SRO determined 'any prior gaps caused by the FAPE denials had been bridged' during E.G.'s 2021-22 attendance at Winston, and that E.G. 'was performing on grade level by the time the case was before the IHO.'"  Objections at 4 (quoting R&R at 18).  Plaintiffs claim that neither the IHO nor the SRO found that E.G. "reached grade-level functioning at Winston during the 2021-22" school year, and regardless the record would not support such a finding.  *Id.* at 4-11.  Defendants resist these contentions, arguing that both the IHO and the SRO "properly determined that [E.G.] was performing at grade level and making significant progress," and that the SRO's determination in this regard was thoroughly reasoned and should therefore be afforded deference.  Responses at 3-5.

---

[5] Plaintiffs also contend that there was no basis for the following observation in the Report and Recommendation:  "It cannot be the case that so long as a plaintiff is able to find an expert to support their position regarding compensatory education, the SRO is bound by that decision." Report and Recommendation at 21; *see* Objections at 15.  This comment did not seem to play any meaningful role in Judge Willis's analysis.  But regardless, in arriving at its determination to adopt the Judge Willis's recommendation, this Court does not place any weight on this sentence of the Report and Recommendation.

The Court begins with Plaintiffs' second argument—that Judge Willis incorrectly found that the SRO determined E.G. was performing on grade level by the time of the IHO proceeding. The relevant excerpt of the Report and Recommendation reads as follows:

> The question at issue is whether gaps caused by the FAPE denials had been bridged by the time the record was before the IHO. Considering the facts about E.G.'s performance at Winston in the record, this Court believes that the denial of compensatory education is supported by the record. The Winston dean testified that E.G. was 'appropriately grouped with her peers' at Winston. The Winston dean also testified that there was a 'very real probability that E.G. could graduate on grade level.' While the testimony was speculative, the SRO relied on the language to conclude that E.G. had made significant progress at Winston such that any prior gaps caused by the FAPE denials had been bridged. This Court agrees that the testimony of the Winston dean, coupled with E.G.'s Winston grades of As and Bs, shows that she was performing on grade level by the time the case was before the IHO.

R&R at 17-18 (first quoting Dkt. 56 at 29 and then quoting Dkt. 23-1 at 29-30). Regardless of whether this excerpt reflects that Judge Willis considered E.G. as reaching grade-level functioning at Winston during the 2021-2022 school year, the end result here would remain unchanged because the SRO did not rely on the notion that E.G. was performing on grade level. Rather, as Judge Willis noted in the above excerpt, the SRO clearly concluded that "any prior gaps caused by the FAPE denials had been bridged," and the SRO rested his conclusion on *that* finding. *See* Dkt. 23-1 at 30.

It also was appropriate the SRO to rely on that finding—*i.e.*, that prior gaps caused by the FAPE denials had been bridged by that point—and not that E.G. was necessarily on grade level, to determine that E.G. was not entitled to compensatory education. Compensatory education "must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *East Lyme Bd. of Educ.*, 790 F.3d at 457. And the SRO explicitly found that the requested compensatory education was not necessary to "place [E.G.] in the position he or she would have been in had the

district complied with its obligations under the IDEA." Dkt. 23-1 at 20 (citing *Newington Bd. of Educ.*, 546 F.3d at 123); *accord id.* at 30 (finding that E.G. "made progress in the district program and was passing from grade to grade," that she was additionally "flourishing at her current placement at Winston Prep," and that under such circumstances, "the hearing record d[id] not require a finding that compensatory education services are necessary," and further quoting *Reid ex rel. Reid*, 401 F.3d at 518, for the proposition that compensatory education is a "replacement of educational services the child should have received in the first place" and that compensatory education awards "should aim to place disabled children in the same position they would have occupied but for the school district's violations of IDEA"). Accordingly, Plaintiffs' objection that Judge Willis deferred to a finding the SRO did not make is irrelevant to the ultimate question of whether to disturb the SRO's determination that E.G. is not entitled to the requested compensatory education.[6]

Returning to Plaintiffs' first argument in this category—which challenges Judge Willis's purported finding that the SRO determined that Winston had erased all of E.G.'s academic deficits, Objections at 9—that argument too fails. Here, Plaintiffs are simply misreading the Report and Recommendation. In the full quoted language from the Report and Recommendation, as quoted above, Judge Willis did not conclude, or state that the SRO concluded, that Winston erased *all of* E.G.'s academic deficits (*i.e.*, including any that accrued prior to the denial of a FAPE in 2019-2020 and 2020-2021), but rather agreed with the SRO's clear findings that any deficits "*caused by the FAPE denials* had been bridged." Plaintiffs' related argument that the SRO did not, in fact, find that "any prior gaps caused by the FAPE denials had been bridged," Objections at 9 is directly

---

[6] Plaintiffs' argument that the March 2021 IEP contradicts any finding that E.G. was functioning on grade level is therefore also beside the point. *See* Objections at 19.

refuted by the text of the SRO's decision.  As quoted above, the SRO determined that "the hearing record does not require a finding that compensatory education services are necessary" and then cited *Reid ex rel. Reid*, 401 F.3d at 518, for the proposition that compensatory education is a "replacement of educational services the child should have received in the first place" and that compensatory education awards "should aim to place disabled children in the same position they would have occupied but for the school district's violations of IDEA."  Dkt. 23-1 at 30.  This portion of the SRO's decision demonstrates that the SRO found that the education E.G. received at Winston had remedied any deficits caused by the FAPE denials.

## C.    Equitable Principles

Plaintiffs' final objection also fails.  Plaintiffs assert that denying their requested compensatory education is contrary to Second Circuit precedent because such a decision "renders [E.G.'s] right to a FAPE during the 2019-20 and 2020-21 [school years] illusory, and it violates the principle that Congress did not intend to 'create a right without a remedy.'"  Objections at 23 (quoting *Burr v. Ambach*, 863 F.2d 1071, 1078 (2d Cir. 1988), *cert. granted, judgment vacated sub nom. Sobol v. Burr*, 492 U.S. 902 (1989), *and on reconsideration sub nom. Burr v. Sobol*, 888 F.2d 258 (2d Cir. 1989)).  But as noted above, compensatory education "must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place."  *East Lyme Bd. of Educ.*, 790 F.3d at 457 (internal quotation marks omitted).  E.G.'s right to a FAPE is not illusory, nor is it a right without a remedy, because the SRO found that the damage she suffered—the educational progress she lost due to the FAPE denials—had been adequately remedied by the instruction she was receiving at Winston.  Any award of compensatory education in these circumstances would effectively amount to a supplemental award of monetary damages, which is

21

impermissible under the IDEA.  *See Bird*, 2023 WL 8258026, at *6 (finding that a request for compensatory education was "essentially a claim for monetary damages" where the plaintiffs had not demonstrated that compensatory education was necessary to bring the student "up to the level that she would have been in had she received a FAPE" and denying the request on that basis, citing *Polera v. Board of Education of Newburgh Enlarged City School District*, 288 F.3d 478, 483 (2d Cir. 2002)).

D.    **Alternative Requested Relief**

In the concluding portion of their objections, Plaintiffs request that the Court remand this matter to Judge Willis for further proceedings if the Court finds that "further analysis or evidence is necessary to properly adjudicate the parties' cross-motions for summary judgment."  Objections at 24.  Plaintiffs do not, however, submit any additional substantive arguments in this portion of their objections.  Nor does the Court see any need for a remand to resolve the parties' motions for partial summary judgment.  Thus, and for the reasons stated above, the Court declines to remand this matter to Judge Willis for further proceedings.

* * *

Finally, the Court also has conducted *de novo* review of the remainder of the Report and Recommendation to which Plaintiffs did not object, and finds it to be well-reasoned and its conclusions well-founded.

**IV.  Conclusion**

For the foregoing reasons, the Court adopts Judge Willis's recommendation.  Plaintiffs' motion for partial summary judgment is denied and Defendants' motion for partial summary judgment is granted.

The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 27 and 36.

SO ORDERED.

Dated: March 30, 2024
New York, New York

_____
JOHN P. CRONAN
United States District Judge